IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDUARDO TOMEO; JOSEPH MORDEN; PAMELA SLAUGHTER; and FRANK LOPEZ, individually and on behalf of all others similarly situated, | No. 1:13-cv-04046 |
| Plaintiffs, | Hon. Sara L. Ellis |
| v. | |
| CITIGROUP, INC. and CITIMORTGAGE, INC., | |
| Defendants. | |

## PLAINTIFF EDUARDO TOMEO'S MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................. 2

    A.    The Telephone Consumer Protection Act ............................................ 2

    B.    Citi used autodialers to place millions of calls and texts to consumers' cell phones ........................................................................ 3

    C.    Citi used its ▮▮▮▮ and ▮▮▮▮▮ dialers to place calls and send texts to cell phones of borrowers who expressly asked not to be called, including Mr. Tomeo ................................................................. 5

    D.    Citi used its ▮▮▮▮ autodialer to call cell phones even after Citi was told that the number Citi dialed was the wrong number ................... 5

    E.    Citi's records show whether a call was placed without consent .......... 7

    F.    The Wrong Number Class can be identified by analyzing Citi's records and publicly available databases ........................................ 8

III.    AUTHORITY AND ARGUMENT ................................................................... 8

    A.    Plaintiff Tomeo meets the requirements of Rule 23 ........................... 10

        1.    The proposed Classes are sufficiently numerous ................... 10

        2.    The proposed Classes involve common issues of law and fact ............. 10

        3.    Plaintiff Tomeo's claims are typical of those of the Classes ................. 12

        4.    Plaintiff Tomeo and his counsel are adequate ........................ 13

    B.    Plaintiff Tomeo satisfies the Rule 23(b)(3) requirements ................... 14

        1.    Common issues predominate ..................................................... 14

        2.    A class action is superior and manageable ............................. 18

IV.    CONCLUSION .................................................................................................. 21

V.    MEET AND CONFER REQUIREMENT ...................................................... 21

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
   No. 15-CV-6314-YGR, 2017 WL 1806583 (N.D. Cal. May 5, 2017) ............................ 9

*Alea London Ltd. v. Am. Home Servs., Inc.*,
   638 F.3d 768 (11th Cir. 2011) ....................................................................................... 3

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
   747 F.3d 489 (7th Cir. 2014) ....................................................................................... 17

*Bee, Denning, Inc. v. Capital Alliance Grp.*,
   310 F.R.D. 614 (S.D. Cal. 2015) .............................................................................. 9, 19

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   302 F.R.D. 240 (N.D. Ill. 2014).................................................. 9, 10, 11, 13, 14, 17, 20

*Booth v. Appstack, Inc.*,
   No. C13-1533JLR, 2015 WL 1466247 (W.D. Wash. March 30, 2015).......................... 9

*Bridging Communities, Inc. v. Top Flite, Inc.*,
   843 F.3d 1119 (6th Cir. 2016) ..................................................................................... 18

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ..................................................................................... 20

*Butler v. Sears, Roebuck & Co.*,
   702 F.3d 359 (7th Cir. 2012) ................................................................................. 14, 17

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ....................................................................................... 14

*Chapman v. Wagener Equities Inc.*,
   747 F.3d 489 (7th Cir. 2014) ....................................................................................... 10

*Chicago Teachers Union, Local 1 v. Board of Educ. of the City of Chicago*,
   307 F.R.D. 475 (N.D. Ill. 2015)................................................................................... 12

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*,
   No. 15-3931, 2017 WL 3496532 (3d Cir. Aug. 16, 2017) ............................................ 13

*Erica P. John Fund, Inc. v. Halliburton*,
131 S. Ct. 2179 (2011) ................................................................................ 14

*Espejo v. Santander Consumer USA, Inc.*,
No. 11 C 8987, 2016 WL 6037625 (N.D. Ill. Oct. 14, 2016) ......................... 11

*Gager v. Dell Fin. Servs., LLC*,
727 F.3d 265 (3d Cir. 2013) ................................................................... 1, 5, 11

*Gomez v. St. Vincent Health, Inc.*,
649 F.3d 583 (7th Cir. 2011) ....................................................................... 13

*Hill v. Colorado*,
530 U.S. 703 (2000) ...................................................................................... 3

*Hinman v. M&M Rental Ctr.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) ............................................................ 12

*Ikuseghan v. MultiCare Health Sys.*,
No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015) ...................... 9, 12

*In re Fluidmaster, Inc. Water Connector Litig.*,
No. 14-cv-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ...................... 15

*Kleen Prods. LLC v. Int'l Paper*,
306 F.R.D. 585 (N.D. Ill. 2015) ................................................................ 8, 9

*Krakauer v. Dish Network LLC*,
No. 2017 WL 2242952 (M.D.N.C. May 22, 2017) .................................. 11, 20

*Kristensen v. Credit Payment Serv.*,
12 F.Supp.3d 1292 (D. Nev. 2014) ...................................................... 9, 10, 16

*Mims v. Arrow Fin. Servs., LLC*,
132 S. Ct. 740 (2012) ................................................................................... 2

*Mitchem v. Ill. Collection Serv., Inc.*,
271 F.R.D. 617 (N.D. Ill. 2011) .................................................................... 9

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) .......................................................... 13, 18, 20

*Osorio v. State Farm Bank, F.S.B.*,
746 F.3d 1242 (11th Cir. 2014) ................................................................... 11

*Pietrzycki v. Heights Tower Serv., Inc.*,
    197 F. Supp. 3d 1007 (N.D. Ill. 2016) .......................................................................... 10

*Sadowski v. Med1 Online, LLC*,
    No. 07-2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008)........................................... 10

*Savanna Grp., Inc. v. Trynex, Inc.*,
    No. 10-7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013)................................................... 13

*Schweitzer v. Comenity Bank*,
    866 F.3d 1273 (11th Cir. 2017) ..................................................................................... 11

*Soppet v. Enhanced Recovery Co.*, LLC,
    679 F.3d 637 (7th Cir. 2012) ......................................................................................... 11

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ................................................................................... 11, 17

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*,
    861 F. Supp. 2d 898 (N.D. Ill. 2012) ............................................................................ 16

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017) ....................................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)....................................................................................................... 11

*Whitaker v. Bennett Law, PLLC*,
    No. 13-cv-3145-L(NLS), 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014)................. 10, 12

*Wilson v. Kiewit Pac. Co.*,
    No. C 09-03630 SI, 2010 WL 5059522 (N.D. Cal. Dec. 6, 2010) ................................ 16

**FEDERAL STATUTES**

47 U.S.C. § 227....................................................................................................................... 15

47 U.S.C. § 227(b)(1)(A)(iii)..................................................................................................... 3

47 U.S.C. § 227(b)(3) ............................................................................................................. 11

**FEDERAL RULES**

Fed. R. Civ. P. 23(a)(1)........................................................................................................... 10

Fed. R. Civ. P. 23(a)(3) .................................................................................................. 12

Fed. R. Civ. P. 23(b)(3) .................................................................................................. 9

## OTHER AUTHORITIES

*In re Rules and Regulations Implementing the TCPA*,
    23 F.C.C.R. 559 (Jan. 4, 2008) ................................................................................. 13

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    30 F.C.C. Rcd. 7961 (2015) ................................................................................... 3, 11

S. Rep. No. 102-178, 6, 1991 U.S.C.C.A.N. 1968 (1991) ........................................... 3

# I.  INTRODUCTION

Defendants Citigroup, Inc. and CitiMortgage, Inc., ("Citi") systematically and repeatedly violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, by placing calls with an autodialer to the cell phones of 12,269 persons who told Citi to stop and whose request to stop calling was logged by Citi in its records. Citi also used an autodialer to call at least 11,585 telephone numbers that Citi logged as wrong numbers. Plaintiff Eduardo Tomeo seeks to certify the following Classes:

> Cease and Desist Class: All persons (1) during the period of October 27, 2010 to November 30, 2014 (2) to whom Citi placed two or more voice calls or short message service (SMS) calls (3) using the Aspect UIP or Genesys dialers  (4) and Citi's business records indicate the person requested not to be called.

> Wrong Number Class: All persons (1) during the period of October 27, 2010 to November 30, 2014 (2) to whom Citi placed two or more voice calls, (3) using the Aspect UIP dialer, (4) and Citi's business records indicate that Citi was told it had called the wrong number.

These Classes, which are narrower than the Classes in the Consolidated Complaint, are specifically tailored to the evidence of Citi's unlawful dialing practices developed in this case. Despite the relatively small number of Class members, the number of Telephone Consumer Protection Act ("TCPA") violations is staggering: Citi placed 2,428,645 calls and texts to 12,269 members of the Cease and Desist Class and 861,048 calls to 11,585 to members of the Wrong Number Class. Plaintiff Tomeo is a member of both Classes.[1] Creditors are charged with honoring consumer requests to stop calling. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270 (3d Cir. 2013). Thus, this case strikes at the heart of willfully illegal activity: Citi logged the

---

[1] As Mr. Tomeo is a member of both Classes, Plaintiffs are proposing him as the class representative.

Class members' instructions, and then blatantly disregarded its own records, blanketing people they knew should not get calls with automated debt collection calls and text messages.

Plaintiff Tomeo seeks to have this case certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3) so that the claims of thousands of class members nationwide may be resolved in one fair and efficient proceeding. Certification is appropriate because there are numerous questions of law and fact common to all proposed Class members that predominate over any individualized issues, for example, whether the dialers Citi used constitute an automated telephone dialing system ("ATDS") under the TCPA, whether Citi had a duty to stop calling once it logged the Class member's desire not to receive calls, and whether continuing to autodial a phone number Citi knew to be nonconsensual constitutes a "willful or knowing" violation. Each of these questions can be answered using common evidence that exists in Citi's records, and analysis of the evidence rests on the same legal theories.

For these reasons, Plaintiff Tomeo respectfully requests that the Court certify the case as a class action; appoint him as the class representative for the Classes; and appoint the law firms of Burke Law Office, LLC, Terrell Marshall Law Group PLLC ("TMLG"), Saeed & Little, LLP, and Dicello Levitt & Casey LLC ("Levitt") as class counsel.

## II.  STATEMENT OF FACTS

### A.    The Telephone Consumer Protection Act.

The Telephone Consumer Protection Act was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices—like the ones Citi employed in this case. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Congress found that the unique, personal nature and added cost of mobile phone use mandated strong consumer protections, specifically targeting the autodialed and prerecorded calls it considered to

be a greater nuisance and privacy invasion than calls from "live" persons.[2] *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8023 (2015) (highlighting enhanced privacy concerns "where the calls are received on a phone that the consumer may carry at all times," and noting that "autodialed and prerecorded calls are increasingly intrusive in the wireless context, especially where the consumer pays for the incoming call"). Indeed, as the Supreme Court held in a different context: "The unwilling listener's interest in avoiding unwanted communication is an aspect of the broader 'right to be let alone' ... the most comprehensive of rights and the right most valued by civilized men." *Hill v. Colorado*, 530 U.S. 703, 716–17 (2000) (citation omitted).

The TCPA thus broadly prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). Said another way, all non-emergent autodialed calls to cell phones are illegal, unless the caller has consent of the called party. "The TCPA is essentially a strict liability statute[;] … [it] does not require any intent for liability except when awarding treble damages." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (citation omitted).

### B.    Citi used autodialers to place millions of calls and texts to consumers' cell phones.

CitiMortgage harasses consumers by using autodialers to relentlessly contact them on their cell phones about supposedly deficient accounts. Citi ████████████████████

---

[2] *See* S. Rep. No. 102-178, 6, 1991 U.S.C.C.A.N. 1968, 1974 (1991) (identifying legislative goal of "ban[ning] all autodialed calls, and artificial or prerecorded calls, to ... cellular phones").

██████████████████████████████████████████████. Ex. 1.[3] ████████████

██████████████████████████. Ex. 2 at 15:19-25. CitiMortgage also ████████████

█████████████████████████████████. *See* Ex. 3 (Hansen Expert Report)

¶¶ 33-36; Ex. 4 at 1212–13 ████████████████████████████████████.

The ████████ dialer is an ATDS because it has the capacity to dial numbers in

predictive mode. Ex. 3 ¶¶ 17-32. Lori Mann, a project manager for Citi and Citi's Rule 30(b)(6)

corporate designee, ████. Ex. 5 at 26:22-28:3 ████████████████████████████████

████. The system that Citi uses ████████████████ also is an ATDS. Ex. 3 ¶¶ 33-36 ("The

████████████ system has the capacity to store numbers in a database, generate numbers for

inclusion in a calling list, and call those numbers without human intervention and deliver SMS

messages.").

Plaintiff Tomeo's expert analyzed the ██████ calling data produced by Citi during

discovery and determined that Citi produced records of 64,486,556 calls to 389,252 unique cell

phones. Ex. 3 ¶ 45.[4] These numbers likely represent a fraction of the total calls placed to

borrowers' cell phones. Citi did not produce — or apparently preserve — any ██████ data for

calls placed before October 2013 or after August 30, 2015. Ex. 7 at 19. This data would have

included records of all calls placed to Plaintiff Tomeo. *See* Ex. 8 (showing calls Citi placed to

Mr. Tomeo occurred before October 2013). Citi's records show that it used the ██████ dialing

system ████████████████████████ Ex. 6 (Hansen Rebuttal Report) ¶ 24.

---

[3] All numerically-numbered exhibits are attached to the Declaration of Beth E. Terrell ("Terrell Decl."), which is Exhibit A to this motion.

[4] In his rebuttal report, Mr. Hansen revised these numbers in response to Citi's expert's assertion that a 15-day grace period for number porting must be accounted for. Ex. 6 (Hansen Rebuttal Report) ¶ 56. After accounting for the grace period, Mr. Hansen concludes that Citi placed 64,144,367 to 384,658 cell phone numbers. *Id.*

**C.** **Citi used its ████████████ dialers to place calls and send texts to cell phones of borrowers who expressly asked not to be called, including Mr. Tomeo.**

The TCPA requires mortgage servicers to honor requests to cease and desist by borrowers who no longer wish to be called or texted on their cell phones. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270 (3d Cir. 2013). Citi had a written policy ████████ ████████, but routinely failed to follow this policy. Citi's own records show that Citi used an autodialer to contact people on their cell phones after the called parties requested that they not be called. Ex. 6 ¶¶ 187–188. All of these attempts were made with the autodialers. Ex. 3 ¶¶ 17, 33–36.

Citi's records show that Citi called Plaintiff Tomeo on his cell phone after he told Citi that he was not the accountholder and "would like to have his number removed" from the account. Ex. 8. Citi's records indicate that Citi placed several calls to Mr. Tomeo after he asked them to stop, including calls that he answered. *See* Terrell Decl. ¶ 20 & Ex. 8. Plaintiff Tomeo is not alone. The partial records that Citi produced to Plaintiffs show that Citi placed 2,428,645 calls and texts to 12,269 unique cell phone numbers after Class members requested that they not be called. Ex. 6 ¶ 62. These records, which Citi has refused to supplement, likely reflect the tip of an iceberg.

**D.** **Citi used its █████ autodialer to call cell phones even after Citi was told that the number Citi dialed was the wrong number.**



Citi's "███████████████████████████████████████████ █████████████████████████." Ex. 13 (Sponsler Expert Report) ¶ 72. Citi instructs its agents ███████████████████████████████████████ ███████████████." *See* Ex. 9 at 1363. This policy ██████████████ ███████████████████████. *Id.* However, agents ████████████ ████████████████████████████████████████████████



██████ *Id.* at 1364. ███████████████████████████████████████████

███████. Ex. 5 at 21:13-19; Ex. 9 at 1365 (█████████████████████████

████████████████████████████). The ██████ calling data shows ████████

████████████████████████ Ex. 10 at 7206. When that occurs, the number is

███████████████████████████████. Ex. 5 at 24:11-16. Despite this policy,

Citi's records show it used the ██████ dialer to place 861,048 calls to 11,585 cell phone numbers

after ████████████████████. Ex. 6 ¶ 122.

Plaintiff Tomeo received calls to his cell phone regarding his mother's account with Citi.

Ex. 11 at 18:18-20:4. At first, Plaintiff Tomeo politely told Citi that he was not his mother,

offered to provide her cell phone, and asked Citi to stop calling. *Id.* at 20:21-21:23. Citi told him

that it could not make changes to the account information because he was not the accountholder.

*Id.* at 22:24-23:4. When the calls persisted and interrupted Plaintiff Tomeo at work, Plaintiff

Tomeo stopped being nice. *Id.* at 37:6-17 ("I had a very bad manner to talk to because I was very

frustrated and I didn't know how to stop such calls."). Still the calls continued. Citi's records

show that Citi placed several calls to Plaintiff Tomeo after Tomeo told Citi that Citi was calling

the wrong number. Terrell Decl. ¶ 20, Ex. 8.

Plaintiff Tomeo filed a proposed class action lawsuit against Citi on May 31, 2013. Dkt.

#1. Although Plaintiff Tomeo alleged in his complaint that he received calls in April 2013, Citi

apparently did not produce calling data from its ██████ dialer relating to these calls or to any

calls placed to proposed Class members during this time. In response to an interrogatory, Citi

stated that it had not retained any Aspect calling data relating to calls placed before October

2013. *See* Ex. 7.

**E.**    **Citi's records show whether a call was placed without consent.**

Citi produced policy documents and spreadsheets showing that Citi is well aware that its employees routinely fail to abide by Citi's ostensible policy of honoring cease and desist requests. In fact, Citi apparently *expects* cease and desist errors to occur and thus has adopted a written policy ████████████████████████████████████████████████████

████████████████████████████████████████████████████ ██████ Ex. 12 at 1293 (█████████████████████████████████

████████████████████████████████████████████████████████

██████████████

An error is deemed to occur only after Citi █████████████████████████████

████████████████████████████████. *See generally* Ex. 12. For example, █████████████████████████████████████

████████████████████████████████████████████████████████.

*Id.* at 1295. ████████████████████████████████████████████.

*Id.* at 1306. ████████████████████████████████████████████

██████████████████████████." *Id.* at 1306–11. ██████████████████████

████████████████████████████████.

Citi produced spreadsheets documenting calls that ████████████████████

██████████████████. *See* Terrell Decl. ¶ 25. Plaintiffs' expert analyzed these reports in connection with other calling data and determined that Citi erroneously placed 26,194 call attempts to at least 7,731 cell phone numbers associated with accounts that had been coded "cease and desist" or "do not call." Ex. 6 ¶¶ 72-85. None of the calls identified in the ████ reports required any individualized review of account notes: ████████████████████████

████████████████████████████████████████████████. *See* Ex. 12.

Citi continued to make millions of calls to Class members after these errors were identified. Ex. 6 ¶ 87–104.

Citi also has produced "account notes" that Citi asserts indicate ███████████ ████████████████████████████████████. Ex. 6 ¶¶ 87–105. Plaintiffs' expert can compare this data to calling records produced in this case to identify calls placed after a person revoked consent and before the person allegedly "re-consented" to the calls. *Id.* ¶ 105.

### F. The Wrong Number Class can be identified by analyzing Citi's records and publicly available databases.

Citi's ████ calling records plainly indicate ██████████████████ ████████████████████. *See* Hansen Expert Report ¶ 46; Hansen Rebuttal Expert Report ¶¶ 107–109. Citi's account notes also show ████████████ ████████████████████████. *See, e.g.*, Ex. 8 (indicating that Tomeo did not have "authorization" on the account) and they indicate ███████████ ██████████████████████. Ex. 6 ¶ 108.

Members of the Wrong Number Class are not Citi accountholders and thus Citi would not have names and contact information for the wrong numbers Citi called. However, according to expert Anya Verkhovskaya, the names and addresses associated with the cell phone numbers at the time of the call can be obtained by querying databases that contain historical information. *See generally* Rebuttal Expert Report of Anya Verkhovskaya which is attached as Exhibit E to this motion.

### III. AUTHORITY AND ARGUMENT

In order to certify a class, Plaintiff Tomeo must demonstrate that the requirements of Rule 23 are met. First, a proposed class must meet all of the requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Kleen Prods.*

*LLC v. Int'l Paper,* 306 F.R.D. 585, 589 (N.D. Ill. 2015) (citing *Messner v. Northshore Univ. HealthSys.,* 669 F.3d 802, 811 (7th Cir. 2012)). Second, the proposed class must qualify as a type described in Rule 23(b). Plaintiff Tomeo here seeks certification of the proposed Classes under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Courts in the Seventh Circuit and elsewhere frequently certify classes involving calls made to cell phones with an ATDS. *See, e.g., Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014) (certifying two litigation classes for automated calls made to either a cellphone or landline that advertised free cruises in exchange for participation in various surveys); *Mitchem v. Ill. Collection Serv., Inc.*, 271 F.R.D. 617, 620 (N.D. Ill. 2011) (certifying litigation class consisting of all persons who received calls to their cell phones seeking to collect debt for medical services); *Ikuseghan v. MultiCare Health Sys.*, No. C14-5539 BHS, 2015 WL 4600818, at *8 (W.D. Wash. July 29, 2015) (certifying class of individuals to whom automated debt collection calls were placed to cellular telephones); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2015 WL 1466247, at *17 (W.D. Wash. March 30, 2015) (certifying class of individuals and small businesses to whom automated debt collection calls were placed to cellular telephones); *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583, at *2 (N.D. Cal. May 5, 2017) (certifying class of consumers and a small business that received telemarketing calls to cellular telephones); *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614 (S.D. Cal. 2015) (same); *Kristensen v. Credit Payment Serv.*, 12 F.Supp.3d

1292 (D. Nev. 2014) (same); *Whitaker v. Bennett Law, PLLC,* No. 13-cv-3145-L(NLS), 2014

WL 5454398 (S.D. Cal. Oct. 27, 2014) (same). This case should be no different.

A. **Plaintiff Tomeo meets the requirements of Rule 23.**

1. **The proposed Classes are sufficiently numerous.**

A class is numerous if it is large enough "that joinder of all parties is impracticable." Fed.

R. Civ. P. 23(a)(1). Numerosity is determined prior to consideration of whether a particular class

member has a valid claim. *See Chapman v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir.

2014) ("[A] class can be certified without determination of its size, so long as it is reasonable to

believe it large enough to make joinder impracticable and thus justify a class action suit.").

Courts regularly make "common sense" conclusions in certifying TCPA classes, *Sadowski v.*

*Med1 Online, LLC*, No. 07-2973, 2008 WL 2224892, at *3 (N.D. Ill. May 27, 2008), but the rule

of thumb is that forty or so similarly situated persons are impracticable to join into a single

proceeding. *Pietrzycki v. Heights Tower Serv., Inc.*, 197 F. Supp. 3d 1007, 1018 (N.D. Ill. 2016).

As explained above, Plaintiff Tomeo's proposed Cease and Desist Class includes

thousands of cellular telephone numbers that were called using Citi's ███████████ dialers

after Citi logged requests to stop. There were similarly many thousands of telephone numbers

Citi called after it had logged that the number was a wrong number. This is sufficient to satisfy

numerosity.

2. **The proposed Classes involve common issues of law and fact.**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To

establish commonality, a plaintiff must show that the class members all "suffered the same

injury." *Birchmeier*, 302 F.R.D. at 250 (citations omitted). "Where the same conduct or practice

by the same defendant gives rise to the same kind of claims from all class members, there is a

common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (the matter must be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke"). In other words, "[w]hat matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal marks and citation omitted; emphasis in original).

The common questions of law and fact in this case include: (1) whether Citi's █████ dialer constitutes an ATDS;[5] (2) whether Citi's █████ dialing system constitutes an ATDS; (5) whether it is permissible to autodial a cell phone after a request to stop;[6] (5) whether it is permissible to autodial a "wrong number" cell phone number;[7] and (6) whether Citi's violations were willful.[8]

These questions are the most important questions in the case, and are common to each of the Class members. Thus, they are sufficient to satisfy Rule 23(a)(2)'s commonality requirement. *See Birchmeier*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) (commonality satisfied where class

---

[5] An █████ dialer is an ATDS under the TCPA. *Espejo v. Santander Consumer USA, Inc.*, No. 11 C 8987, 2016 WL 6037625, at *5 (N.D. Ill. Oct. 14, 2016) (Kokoras, J.) ("this Court joins those in this circuit and elsewhere in holding that a predictive dialer such as █████████████ falls within the scope of the TCPA.").

[6] It is not permissible to call a cell number after a request to stop. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270–71 (3d Cir. 2013); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014); *In the Matter of Rules and Regulations Implementing the TCPA*, 30 F.C.C. Rcd. 7961 at 7996 (2015); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017); *Schweitzer v. Comenity Bank*, 866 F.3d 1273 (11th Cir. 2017).

[7] Autodialed calls to "wrong number" cell phones violate the TCPA. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012).

[8] The TCPA provides for up to three times statutory damages where the defendant "willfully or knowingly" violated the statute. 47 U.S.C. § 227(b)(3); *Krakauer v. Dish Network LLC*, No. 2017 WL 2242952, at *13 (M.D.N.C. May 22, 2017) (applying treble damages to $21M class-wide jury verdict).

members suffered a common injury, "resulting from receipt of the allegedly offending calls");

*Whitaker*, 2014 WL5454398 at *5 (commonality satisfied where the central issue was whether

the defendant used an ATDS or prerecorded or artificial voice to make unsolicited calls);

*Ikuseghan*, 2015 WL 4600818 at *6 (commonality satisfied where issue was whether

standardized evidence showed prior express consent). The proposed Classes thus satisfy the

requirements of Rule 23(a)(2).

> ### 3.     Plaintiff Tomeo's claims are typical of those of the Classes.

"Typicality" requires that "the claims or defenses of the representative parties are typical

of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A claim is typical if it arises

from the same event or practice or course of conduct that gives rise to the claims of other class

members and her claims are based on the same legal theory." *Chicago Teachers Union, Local 1*

*v. Board of Educ. of the City of Chicago*, 307 F.R.D. 475, 480-81 (N.D. Ill. 2015). Put

differently, where the defendant engages "in a standardized course of conduct vis-a-vis the class

members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met."

*Hinman v. M&M Rental Ctr.*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citing *Keele v.*

*Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Citi's standardized course of conduct is well-suited to class treatment. As to the Cease

and Desist Class, Citi's business records show that Citi used the contested dialers to place calls

to Mr. Tomeo and Class member's cell phones, even though they had already asked Citi to stop.

As to the Wrong Number Class, Citi's business records show that Citi continued to make calls to

cell phones of Mr. Tomeo and Class members after they had already told Citi that it had called

the wrong number.[9] Because Plaintiff Tomeo's claims under the TCPA arise out of the same

---

[9] Citi is expected to argue that 15-17% of the members of each of these classes did not really receive nonconsensual calls, for one reason or another. This argument should not defeat class certification. Even

course of conduct, are based on the same legal theory, and resulted in the same injury as the proposed Class members, the typicality requirement is satisfied. *See Birchmeier*, 302 F.R.D. at 251 (typicality satisfied where "the named plaintiffs received the same type of call as the other class members"); *see also Savanna Grp., Inc. v. Trynex, Inc.,* No. 10-7995, 2013 WL 66181, at *11 (N.D. Ill. Jan. 4, 2013) (typicality met where plaintiff and class claims "arise from the same legal theory—that Defendants violated the TCPA by sending faxes without [the recipient's] express consent").

### 4. Plaintiff Tomeo and his counsel are adequate.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In analyzing adequacy, the Court considers "the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Here, Plaintiff Tomeo has the same interest as the Class members: Citi's records show that he received calls to his cell phone from Citi's ▮▮▮▮ dialer without his consent. In support of the Classes, Plaintiff Tomeo has actively participated in the litigation by responding to discovery, sitting for a deposition, and otherwise assisting counsel in their prosecution of this case. Terrell Decl. ¶ 29.

---

if this is true, Citi's proffer concedes that Plaintiff has proffered a workable, objective, way of identifying 85-88% of class members; a very high percentage. Moreover, any inaccuracies in Plaintiff's criteria to determine class membership is the result of poor consent recordkeeping by Citi in the face of a long-standing regulatory requirement to maintain such data and be ready to proffer such. *In re Rules and Regulations Implementing the TCPA*, 23 F.C.C.R. 559, 565, ¶10 (Jan. 4, 2008). A defendant cannot legitimately avoid class certification through its own poor recordkeeping. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015), cert. denied, 136 S. Ct. 1161 (2016). Plaintiffs have proffered a discrete set of persons who got calls when Citi knew they shouldn't have called. This is sufficient for certification purposes. *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, No. 15-3931, 2017 WL 3496532, at *6 (3d Cir. Aug. 16, 2017). To the extent that Citi believes that a subset of these mostly illegal calls were consensual, it may identify the 15-17%, and those persons will be excluded from the class or judgment.

Plaintiffs' counsel are experienced class action practitioners, fully versed in the intricacies of class actions in general and TCPA class actions in particular. *See* Exhibit A (Terrell Decl.) ¶¶ 1–12; Exhibit B (Burke Decl.); Ex. C (Saeed Decl.); Ex. D (DLC Firm Resume). Plaintiffs' counsel are thus adequate, and should respectfully be designated as Class counsel.

**B.    Plaintiff Tomeo satisfies the Rule 23(b)(3) requirements.**

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." *Birchmeier*, 302 F.R.D. at 255 (quoting the rule) (internal quotation marks omitted). For the reasons set forth below, Plaintiff Tomeo satisfies these requirements.

**1.    Common issues predominate.**

The touchstone for predominance analysis is efficiency. *Butler v. Sears, Roebuck & Co.,* 702 F.3d 359, 362 (7th Cir. 2012) ("*Butler I*"), *vac'd on other grounds*, 133 S. Ct. 2768 (2013), *judgment reinstated*, 727 F.3d 796 (7th Cir. 2013) ("*Butler II*"). "[P]redominance is [not] determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Butler II*, 727 F.3d at 801. "An issue 'central to the validity of each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment." *Id.* (*quoting Dukes*, 131 S. Ct. at 2551).

"Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying action." *Erica P. John Fund, Inc. v. Halliburton*, 131 S. Ct. 2179, 2184 (2011). The elements of Plaintiff Tomeo's claim for violations of the TCPA's cell phone restrictions are (1) a telephone call, (2) using an automatic

telephone dialing system, (3) to any cellular telephone service. *See* 47 U.S.C. § 227. Each of these elements can be established using common evidence.

Plaintiff Tomeo will rely on expert testimony to show that Citi used its ████ autodialer to make millions of voice calls to persons who did not consent to receiving calls to their cell phones and its ████ automated calling system to send texts. *See generally* Exs. 3 (Hansen Expert Report), 6 (Hansen Rebuttal Expert Report). All of the Class members' claims will rise or fall on whether Citi can be held liable for these calls, and will be established solely by examining the conduct and records of Citi. Indeed, Plaintiff Tomeo has defined the Classes using Citi's records, such that common evidence may be used to determine whether calls were consensual. Common evidence also can be used to determine which Class members received calls to their cell phones, and how many they received. *See id.* Such call records can be produced in electronic form for each and every Class member by running a simple report. *See id.* Plaintiffs' expert, Jeff Hansen, can examine the call records and identify the cell phone numbers that Citi called using available cell block identifiers and ported numbers lists. *See generally id.*

Plaintiff Tomeo also will rely on common expert testimony to establish that the ████ ████ calling systems are "automated telephone dialing systems" for purposes of the TCPA. *See* Ex. 3 (Hansen Expert Report) ¶¶ 17–36. Citi is free to challenge this evidence with testimony from its own experts. *See, e.g.,* Ex. 13 (Sponsler Expert Report) ¶¶ 129–133. Either way, the Court will resolve this "battle of the experts" once and for all at summary judgment or trial – in one fell swoop. *See In re Fluidmaster, Inc. Water Connector Litig.*, No. 14-cv-5696, 2017 WL 1196990, at *22 (N.D. Ill. Mar. 31, 2017) ("In a case of dueling experts. . . it is left to the trier of fact. . . to decide how to weigh the competing expert testimony.") (citation omitted).

Plaintiff Tomeo anticipates that Citi will take the flawed position that whether Class members provided "prior express consent" is an individualized issue. But the issue of whether potential TCPA class members consented to receive the calls will not predominate here because prior express consent (or the lack thereof) can be determined using Citi's own records. Prior express consent is an affirmative defense for which Citi bears the burden. *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012) ("'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof"). Thus, Plaintiff Tomeo's only job at class certification is to show that consent, or the lack thereof, can be resolved "on evidence and theories applicable to the entire class." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) (citation omitted).

Plaintiff Tomeo has done his job. Plaintiff Tomeo has weeded through hundreds of thousands of accounts, and identified those persons who received calls after a request not to call, or notification to Citi that it was calling the wrong number. Class members who subsequently provided consent can be manageably identified by reviewing Citi's business records, including the "███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████. *See Wilson v. Kiewit Pac. Co.*, No. C 09-03630 SI, 2010 WL 5059522, at *9 (N.D. Cal. Dec. 6, 2010) (holding class was appropriate for certification and manageable where damages could be determined largely by defendant's documents); *see also* Ex. 14 (Taylor dep.) at 75:1–76:2 (testifying that Citi employees can read Citi's consent records "clear as day" and that he, himself, can read them "quite easily"). Citi's records also can be analyzed and queried to determine

whether a call or text was placed to a cell number previously noted as a wrong number. *See* Ex. 3 (Hansen Expert Report) ¶ 46; Ex. 6 (Hansen Rebuttal Expert Report) ¶¶ 10, 57, 107.

"Regardless, arguments about whether someone belongs in the classes do not speak to whether common questions predominate *among class members*; those who are in the classes will be those who can document that they meet the class definitions. Rather, these arguments go to whether an individual may join the classes, which is a different question." *Birchmeier,* 302 F.R.D. at 253-54 (emphasis in original) (finding predominance where defendants could not show that "defenses can or would vary among class members"). "Any difficulty involved in this process is more appropriately addressed under the manageability factor," and as discussed below, the Court has "considerable flexibility in fashioning solutions to manageability issues that arise in class action litigation." *Id.* at 253 (citing *Kartman v. State Farm Mut. Auto Ins. Co.,* 634 F.3d 883, 888 (7th Cir. 2011)).

Moreover, the presence of potential consent arguments for individual members does not defeat predominance, since "[h]ow many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.,* 747 F.3d 489, 492 (7th Cir. 2014). In *Chapman*, the Seventh Circuit addressed predominance in light of potential defenses under the TCPA, holding that such defenses may prevent a particular class member from sharing in damages, but do not defeat predominance. *Id.; see also Suchanek,* 764 F.3d at 759 (recognizing "the need for individual proof alone does not necessarily preclude class certification" and that it would be "straightforward" to try those issues later) (citation omitted); *Butler I*, 702 F.3d at 362 ("Sears argues that most members of the plaintiff class did not experience a mold problem. But if so that is an argument not for refusing to certify the class but for certifying it and then entering a

judgment that will largely exonerate Sears—a course it should welcome, as all class members who had not opted out of the class action would be bound by the judgment."); *Bridging Communities, Inc. v. Top Flite, Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (reversing denial of class certification in TCPA case, holding that "individual issues" like consent should not preclude certification because Rule 23 "requires merely that common issues predominate, not that all issues be common to the class," and that if some class members have no claims, they may be removed or separated through subclasses).

Plaintiff Tomeo does not agree that the issue of consent is material; after all, Citi's own expert ███████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████. *See* Ex. 15 (Taylor Expert Report) ¶¶ 33, 49. Thus, even according to Defendants *almost all* of the Class members received calls in violation of the TCPA. Class certification is particularly appropriate in such circumstances especially in light of the numerous, common issues set forth above. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015) (noting an important policy objective of class actions is "deterring and punishing corporate wrongdoing).

Predominance is satisfied.

**2.      A class action is superior and manageable.**

The second prong of the Rule 23(b)(3) analysis requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context. As one federal court found while certifying a TCPA case:

> Jurists and commentators have long debated the merits of the modern class action and the public policies behind Rule 23…. It is the view of this Court that the instant case highlights one of the strongest justifications for the class action device: its regulatory

> function…A statute such as the TCPA, which provides for a relatively small recovery for individual violations but is designed to deter conduct directed against a large number of individuals, can be effectively enforced only if consumers have available a mechanism that makes it economically feasible to bring their claims. Without the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute.

*Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015); *see also Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.,* No. 12-2257, 2014 WL 6750690, at *6 (N.D. Ohio Dec. 1, 2014) (finding superiority, noting that "individual class members are unlikely to litigate TCPA claims" given limited maximum recovery). The parties in this case will submit dueling expert reports on the issue of whether the ██████████ dialing systems constitute an ATDS under the TCPA. Such experts are highly technical, costly, and few and far between. While Citi would likely be content to rely upon the same expert witness over and over in dozens of individual suits, individual plaintiffs—to the extent they ever even realize their rights were violated—do not have access to such economies of scale. It is simply more efficient, and fairer to consumers, to litigate the ATDS issue on a class-wide basis. If certified, the Court will be able to decide important issues for a multitude of persons.

Finally, this case does not present manageability problems that impact superiority. Citi has names and addresses for many Class members, many of whom are (or were) mortgagors. As for non-accountholders, names and addresses can be matched with telephone numbers through a "reverse lookup" process that has been routinely and effectively used in TCPA class actions. *See generally* Verkhovskaya Rebuttal Report (attached as Exhibit E to this motion).

As an alternative to searching Citi's business records to determine who provided their cell phone numbers to Citi after a cease and desist, the Court could employ an affidavit

procedure such as in *Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2017 WL 3206324, at *9 (M.D.N.C. July 27, 2017), where the parties attempt to jointly identify certain sets of consumers (e.g. those persons where there is no evidence of re-consent), and then send notice to the remainder with a claim form to sort out any disagreements. Given that the average Class member received more than 100 calls, statutory damages at issue for the 83-87% of the persons identified by Plaintiff's process will exceed $50,000 *each*.[10] Plaintiff respectfully submits that a claims process or appointment of a magistrate judge or special master to determine which Class members "re-consented" by providing their cell phone number to Citi is particularly appropriate here. The scope of Citi's improper conduct as to thousands of consumers compels certification. *Mullins,* 795 F.3d at 669 ("Given the significant harm caused by immunizing corporate misconduct, we believe a district judge has discretion to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed."); *Birchmeier,* 302 F.R.D. at 254 (recognizing the court's "ability to fashion a solution that fits the particular circumstances of this case"); *see also Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1128 (9th Cir. 2017) (noting "the variety of procedural tools courts can use to manage the administrative burdens of class litigation")*.* Such efforts are particularly appropriate given that Citi knew about the TCPA's requirements, but made scores of nonconsensual calls anyway. Superiority is satisfied.

---

[10] Plaintiff Tomeo is not aware that *any* of the proposed class members have filed their own suit; perhaps because they have no idea their rights have been violated. Certification will ensure that those persons are provided with notice that they have claims, and the opportunity to participate in this case or exclude themselves. Absent certification, however, thousands of class members who Citi *agrees* received predictive ███████████ calls will recover zero, and will continue having no idea about their potential claims.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff Tomeo respectfully requests that the Court certify the proposed Classes, designate Plaintiff Tomeo as Class representative, appoint Plaintiffs' attorneys as Class counsel, and grant such further and other relief the Court deems reasonable.

## V.  MEET AND CONFER REQUIREMENT

Pursuant to this Court's Motion Practice Procedures, Plaintiffs' counsel Alex Burke and Jennifer Rust Murray met and conferred telephonically on September 8, 2017, at 10:00 a.m. with counsel for Citi, Debra Bogo-Ernst and Michael Bornhorst regarding this motion. *See* Exhibit A (Terrell Decl.) ¶ 30. Plaintiffs' counsel summarized the basis for the motion. Citi's counsel indicated it opposed this motion. *Id.*

RESPECTFULLY SUBMITTED AND DATED this 8th day of September, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By:   /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
      Beth E. Terrell, *Admitted Pro Hac Vice*
      Email:  bterrell@terrellmarshall.com
      Mary B. Reiten, *Admitted Pro Hac Vice*
      Email:  mreiten@terrellmarshall.com
      Jennifer Rust Murray, *Admitted Pro Hac Vice*
      Email:  jmurray@terrellmarshall.com
      936 North 34th Street, Suite 300
      Seattle, Washington 98103-8869
      Telephone: (206) 816-6603
      Facsimile: (206) 319-5450

      Alexander H. Burke
      Email:  aburke@burkelawllc.com
      BURKE LAW OFFICES, LLC
      155 North Michigan Avenue, Suite 9020
      Chicago, Illinois 60601
      Telephone: (312) 729-5288
      Facsimile: (312) 729-5289

Syed Ali Saeed
Email:  ali@sllawfirm.com
SAEED & LITTLE, LLP
1433 North Meridian Street, Suite 202
Indianapolis, Indiana 46202
Telephone: (317) 614-5741
Facsimile: (888) 422-3151

*Attorneys for Plaintiffs Joseph Morden, Pamela
Slaughter, and Frank Lopez and the Proposed Classes*

Adam J. Levitt
Email:  alevitt@dlcfirm.com
Amy E. Keller
Email:  akeller@dlcfirm.com
DICELLO LEVITT & CASEY LLC
10 North Dearborn Street, 11th Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

Sergei Lemberg
Email:  slemberg@lemberglaw.com
LEMBERG & ASSOCIATES
1100 Summer Street, Third Floor
Stamford, Connecticut 06905
Telephone: (203) 653-2250
Facsimile: (203) 653-3424

*Attorneys for Plaintiff Eduardo Tomeo and the
Proposed Classes*

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on September 8, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Alejandro Valle, Indiana Attorney #22863-49
> CITIZENS ENERGY GROUP
> 2020 N. Meridian Street
> Indianapolis, Indiana 46202
> Telephone: (317) 987-6986
> Email: avalle@citizensenergygroup.com
>
> Hans J. Germann
> Email: hgermann@mayerbrown.com
> Debra Bogo-Ernst
> Email: dernst@mayerbrown.com
> Lucia Nale
> Email: lnale@mayerbrown.com
> Joseph M. Snapper
> Email: jsnapper@mayerbrown.com
> Michael H. Bornhorst
> Email: mbornhorst@mayerbrown.com
> MAYER BROWN LLP
> 71 South Wacker Drive
> Chicago, Illinois 60606
> Telephone: (312) 782-0600
> Facsimile: (312) 701-7711
>
> *Attorneys for Defendants*

RESPECTFULLY SUBMITTED AND DATED this 8th day of September, 2017.

> TERRELL MARSHALL LAW GROUP PLLC
>
> By:   /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
>        Beth E. Terrell, *Admitted Pro Hac Vice*
>        Email: bterrell@terrellmarshall.com
>        936 North 34th Street, Suite 300
>        Seattle, Washington 98103-8869
>        Telephone: (206) 816-6603
>
> *Attorneys for Plaintiffs Joseph Morden, Pamela*
> *Slaughter, and Frank Lopez and the Proposed Classes*

- 23 -