IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDUARDO TOMEO; JOSEPH MORDEN; PAMELA SLAUGHTER; and FRANK LOPEZ, individually and on behalf of all others similarly situated, | No. 1:13-cv-04046 |
| Plaintiffs, | Hon. Sara L. Ellis |
| v. | |
| CITIGROUP, INC. and CITIMORTGAGE, INC., | |
| Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

**Page No.**

I.    INTRODUCTION ................................................................................................ 1

II.   AUTHORITY AND ARGUMENT ................................................................... 3

    A.    Common issues predominate ................................................................. 3

        1.    Citi's affirmative defense of consent is not an individualized issue......... 3

        2.    Predominance is satisfied even if Citi's affirmative defense turns in part on individual proof ....................................................... 9

        3.    If Citi's affirmative defense of consent turns on information in Citi's files, class certification is manageable .......................................... 11

    B.    A class action is superior to thousands of individual lawsuits............................ 16

    C.    Plaintiff's claims are typical and he is an adequate representative of the classes ................................................................................................ 18

III.  CONCLUSION.................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page No.**

### FEDERAL CASES

*Abdeljalil v. Gen. Elec. Capital Corp.*,
 306 F.R.D. 303 (S.D. Cal. 2015) .................................................................... 6, 7

*Alpha Tech Pet Inc. v. Lagasse, LLC*,
 Nos. 16 C 413 & C 4321, 2017 WL 5069946 (N.D. Ill. Nov. 3, 2017) ......................... 14

*Allapattah Servs. Inc. v. Exxon Corp.*,
 157 F. Supp. 2d 1291 (S.D. Fla. 2001) .......................................................... 13

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
 568 U.S. 455 (2013) ............................................................................ 9

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
 747 F.3d 489 (7th Cir. 2014) ................................................................. 10

*Balschmiter v. TD Auto Finance LLC*,
 303 F.R.D. 508 (E.D. Wisc. 2014) ............................................................. 15

*Banarji v. Wilshire Consumer Capital, LLC*,
 No. 14-cv-2967-BEN (KSC), 2016 WL 595323 (S.D. Cal. Feb. 12, 2016) ................. 19

*Bias v. Wells Fargo & Co.*,
 312 F.R.D. 528 (N.D. Cal. 2015) ............................................................. 12

*Birchmeier v. Caribbean Cruise Line, Inc.*,
 302 F.R.D. 240 (N.D. Ill. 2014) .............................................................. 8

*Blair v. CBE Group, Inc.*,
 309 F.R.D. 621 (S.D. Cal. 2015) ............................................................. 15

*Booth v. Appstack*,
 No. C 13-1533 JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ......................... 7

*Briseno v. ConAgra Foods, Inc.*,
 844 F.3d 1121 (9th Cir. 2017) ............................................................... 11

*Butler v. Sears, Roebuck & Co.*,
 702 F.3d 359 (7th Cir. 2012) ............................................................. 4, 10

*CE Design Ltd. v. King Architectural Metals, Inc.*,
 637 F.3d 721 (7th Cir. 2011) ..................................................................... 19

*Chapman v. First Index, Inc.*,
 No. 09 C 5555, 2014 WL 840565 (N.D. Ill. Mar. 4, 2014) ........................... 15

*Cholly v. Uptain Group*,
 No. 15 C 5030, 2017 WL 449176 (N.D. Ill. Feb. 1, 2017)............................ 15

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013)....................................................................................6, 9

*Conrad v. General Motors Acceptance Corp.*,
 283 F.R.D. 326 (N.D. Tex. 2012) ................................................................ 15

*Davis v. AT&T Corp.*,
 No. 14-cv-2342, 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017).......................7

*De La Fuente v. Stokely-Van Camp, Inc.*,
 713 F.2d 225 (7th Cir. 1983) ....................................................................... 18

*Espejo v. Santander Consumer USA, Inc.*,
 No. 11 C 8987, 2016 WL 6037625 (N.D. Ill. Oct. 14, 2016) ..........................1

*Etter v. Allstate Ins. Co.*,
 No. C 17-00184 WHA, 2017 WL 6594069 (N.D. Cal. Dec. 26, 2017) ............8

*Freeman v. Wilshire Com. Capital. LLC*,
 2018 WL 1173823 (E.D. Cal. Mar. 6, 2018) .......................................... 1, 16

*Gene & Gene LLC v. BioPay LLC*,
 541 F.3d 318 (5th Cir. 2008) ...................................................................... 14

*Gene & Gene LLC v. BioPay LLC*,
 624 F.3d 698 (5th Cir. 2010) ...................................................................... 14

*Ginwright v. Exeter Fin. Corp.*,
 280 F. Supp. 3d 674 (D. Md. 2017) ...............................................................1

*In re Nassau Strip Search Cases*,
 461 F.3d 219 (2d Cir. 2006)........................................................................ 11

*In re Synthroid Mktg. Litig.*,
 188 F.R.D. 287 (N.D. Ill. 1999)................................................................... 19

*Jamison v. First Credit Servs., Inc.*,
    290 F.R.D. 92 (N.D. Ill. 2013) ...................................................................... 15

*Krakauer v. Dish Network, LLC*,
    No. 1:14-CV-333, 2017 WL 3206324 (M.D.N.C. July 27, 2017) ................................. 13

*Lane v. Wells Fargo Bank, N.A.*,
    No. C 12-04026 WHA, 2013 WL 3187410 (N.D. Cal. June 21, 2013) ......................... 11

*Legg v. PTZ Ins. Agency, Ltd.*,
    321 F.R.D. 572 (N.D. Ill. 2017) ..................................................................... 14

*Lofton v. Verizon Wireless (VAW) LLC*,
    308 F.R.D. 276 (N.D. Cal. 2015) ............................................................... 8, 9

*Martinez v. Adir Int'l, Inc.*,
    No. CV 14-05505-AB (PLAx), 2015 WL 12670519 (C.D. Cal. July 7, 2015) ............. 19

*McKeage v. Bass Pro Outdoor World, LLC*,
    No. 12-03157-cv-S-GAF, 2014 WL 12754996 (W.D. Mo. Oct. 7, 2014) .................... 12

*McMahon v. LVNV Funding, LLC*,
    807 F.3d 872 (7th Cir. 2015) ........................................................................ 10

*Meyer v. Bebe Stores, Inc.*,
    No. 14-cv-00267-YGR, 2017 WL 558017 (N.D. Cal. Feb. 10, 2017) ............................ 6

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015). ...............................................................*Passim*

*Muro v. Target Corp.*,
    580 F.3d 485 (7th Cir. 2009) ........................................................................ 19

*Parko v. Shell Oil Co.*,
    739 F.3d 1083 (7th Cir. 2014) ......................................................................... 6

*Pella Corp. v. Saltzman*,
    606 F.3d 391 (7th Cir. 2010) ......................................................................... 10

*Perez v. First Am. Title Ins. Co.*,
    No. 08-cv-1184, 2009 WL 2486003 (D. Ariz. Aug. 12, 2009) ...................................... 13

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*,
    100 F. App'x 296 (5th Cir. 2004) ..................................................................... 6

*Saulsberry v. Meridian Fin. Servs., Inc.*,
  No. CV 14-6256 JGB (JPRx), 2016 WL 3456939 (C.D. Cal. Apr. 14, 2016) .............. 14

*Smith v. Ceva Logistic U.S., Inc.*,
  No. CV 09-4957 CAS (RCx), 2011 WL 3204682 (C.D. Cal. July 25, 2011) ................. 5

*Soppet v. Enhanced Recovery Co., LLC*,
  679 F.3d 637 (7th Cir. 2012) ........................................................................................ 2

*Snyder v. Ocwen Loan Servicing, LLC*,
  258 F. Supp.3d 893 (N.D. Ill. 2017) ........................................................................... 1

*Starke v. Select Portfolio Servicing, Inc.*,
  No. 17 C 4123, 2017 WL 6988657 (N.D. Ill. Dec. 18, 2017) ......................................... 1

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ....................................................................................... 10

*Toney v. Quality Res., Inc.*,
  __ F.Supp.3d __, 2018 WL 844424 (N.D. Ill. Feb. 12, 2018) ................................. 15, 17

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ............................................................................................. 3, 9

*United States v. Dish Network, L.L.C.*,
  292 F.R.D. 593 (C.D. Ill. 2013) ................................................................................... 8

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
  271 F.R.D. 668 (D. Wyo. 2011) ................................................................................. 12

*West v. Cal. Services Bureau, Inc.*,
  No. 16-cv-3124-YGR, 2017 WL 6316823 (N.D. Cal. Dec. 11, 2017) .......................... 7

*Wolfkiel v. Intersections Ins. Servs., Inc.*,
  303 F.R.D. 287 (N.D. Ill. 2014) ................................................................................. 15

## STATE CASES

*Am. Family Ins. Co. v. Village Pontiac-GMC, Inc.*,
  223 Ill. App. 3d 624 (1992) ......................................................................................... 8

## OTHER AUTHORITIES

*In re Rules & Regs. Implementing the TCPA,*
    30 FCC Rcd. 7961, 7993 (2015) ...................................................................... 2

# I. INTRODUCTION

This case involves systematic and voluminous violations of the Telephone Consumer

Protection Act, 47 U.S.C. § 227(b) – (c) ("TCPA"). ███████████████████████

███████████████████████████████████████████████████. Dkt.

No. 123-1. And call Citi did, placing hundreds of thousands of autodialed calls to cell phones to

try to collect money from people Citi thought were behind on their mortgages. Citi continued to

call even after the consumers told Citi to stop calling or that Citi had the wrong number.

Whether the hundreds of thousands of calls made to class members are covered by the

TCPA is justiciable through common proof. The TCPA prohibits the (1) use of an automatic

telephone dialing system ("ATDS") or prerecorded voice, to (2) call a cellular telephone. *Starke

v. Select Portfolio Servicing, Inc.*, 2017 WL 6988657, at *4 (N.D. Ill. Dec. 18, 2017). The parties

dispute whether Citi's Aspect Unified IP[1] dialer is an ATDS, and have submitted extensive

competing expert declarations on this point analyzing the same documents and data. Whether the

phone numbers to which calls were made were cellular telephones can be determined through a

historical "scrub" of Citi's phone record databases.[2] Thus, the most important issues—Plaintiff's

entire *prima facie* case—can be determined in one fell swoop.

---

[1] Although the parties technically "dispute" whether calls made using Aspect dialers are covered by the TCPA, Plaintiff's position is not conjecture. *See Espejo v. Santander Consumer USA, Inc.*, 2016 WL 6037625, at *5 (N.D. Ill. Oct. 14, 2016) (Kocoras, J.) ("[T]his Court joins those in this circuit and elsewhere in holding that a predictive dialer such as Santander's Aspect system falls within the scope of the TCPA."); *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp.3d 893, 906 (N.D. Ill. 2017) (Kennelly, J.) ("[A]ny phone call made using [Aspect] software—even those dialed manually—could lead to liability under the TCPA."); *see also Freeman v. Wilshire Com. Capital. LLC*, 2018 WL 1173823, at *3 (E.D. Cal. Mar. 6, 2018) ("Aspect is, undeniably, an automatic telephone dialing system"); *Ginwright v. Exeter Fin. Corp*., 280 F. Supp. 3d 674 (D. Md. 2017) ("there is no serious dispute whether the Aspect system qualifies as an ATDS system").

[2] Citi does not contest that a scrubbing process can determine whether phone numbers were cells at the time of a call. The parties disagree as to whether a name can be matched to those numbers.

It is true that Citi had policies designed to comply with the TCPA. But even Citi acknowledges that those policies were not perfect, and Citi's colossal call volume means that small and uniform policy gaps led to hundreds of thousands of nonconsensual autodialed calls. Autodialed calls to "wrong number" cell phones are TCPA violations. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012). Calls made to cell phone numbers after someone has asked that they stop are also TCPA violations. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 7993-95, ¶¶ 55-70 (2015).

Citi contends that whether a person "consented to calls" or whether a call was placed to a wrong number cannot be determined on a classwide basis from Citi's records. But Citi's expert repeatedly states individual notes screens contained within Citi's CitiLink database hold the key for determining whether calls were placed without consent or to wrong numbers. In response, Plaintiff's expert came up with a systematic way to determine whether Citi placed nonconsensual calls. First, he scrubbed calling data to identify calls made to cell phones after a cease and desist request or wrong number flag was placed on the account. Second, he opines that the individual notes screens can be reviewed to confirm that calls were placed without consent or to wrong numbers. All of this work would be performed *before* trial and presented to the jury in summary fashion. This purportedly "individualized" issue can thus be managed before trial without violating Citi's due process rights. Class certification is the superior method for addressing Plaintiff's claims because the only realistic alternative is that class members will have no opportunity for relief at all.

Citi's assertion that Plaintiff is not typical or adequate also fails. Citi challenges his claims on the same basis that it challenges other class members' claims. Plaintiff requests that the Court grant his motion.

## II. AUTHORITY AND ARGUMENT

### A. Common issues predominate.

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Citi does not dispute Plaintiff's contention that Citi made thousands of Aspect phone calls to thousands of cell phone numbers without their customers' consent. All Citi challenges is whether it is easy to figure out who those people are. But identification of class members is not a prerequisite to certification, *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657–58 (7th Cir. 2015), nor is evaluating whether individual members might have valid claims. *Id.* Moreover, Plaintiff has proffered a reasonable way to search the records both parties agree contain the key to the consent question, such that an adequate list of illegal calls will be compiled.

### 1. Citi's affirmative defense of consent is not an individualized issue.

Brushing aside the parties' agreement that liability can be determined on a classwide basis, Citi focuses on its affirmative defense, asserting that proving consent will be difficult given (1) the way it kept its consent records, and (2) that it believes some of its own records are incorrect. But Plaintiff has shown that consent turns on common evidence since it can be determined through searches of Citi's CitiLink database were it fully produced to Plaintiff in the native format in which it is maintained by Citi in the ordinary course of Citi's business.

With respect to the proposed Cease and Desist Class, Citi acknowledges that its written policy ███████████████████████████████████████████████████████████
███████████████████████. Opp. at 4. Citi's written policy ██████████████████████
███████████████████████████████████████████████████████████



Ex. 12 at 1293.[3] ████████████████████████████████

████████████████████████████. *Id.* at 1295. A revised report shows ███████

████████████████████████████ *Id.* at 1306-11.[4]  Plaintiff's expert analyzed

these reports and determined that Citi placed 2,428,645 calls and texts to 12,269 cell phone

numbers after the accounts had been coded "cease and desist" or "do not call." Ex. 6 ¶ 62.[5]

Consent also can be determined on a classwide basis for the Wrong Number Class. Citi

requires agents to flag numbers its agents are told are wrong numbers and its autodialers are not

supposed to call those numbers. Opp. at 5. Nonetheless, Plaintiff's expert identified 861,048 calls

made to 11,585 cell phone numbers after being coded as wrong numbers. Ex. 6 ¶ 62.

Citi contends that sometimes its codes are incorrect and sometimes the borrower

consented again after the account was coded. Opp. at 24. But Citi concedes that the parties can

determine whether this happened by reviewing the note screens in its CitiLink loan servicing

system. Opp. at 22–23. And while the litigation system in which Citi produced a sample of these

materials was indeed cumbersome in that it did not permit "batch" searching and was produced

in files with no defined columns or rows of data, there is no serious dispute that the data can be

extracted or produced in a format that allows for searching, and that either party can run queries

---

[3] Exhibits 1-15 are attached to the Terrell Declaration (Dkt. 123). Exhibits 16-18 are attached to
the Terrell Reply Declaration.

[4] Citi's contention that the error reports merely identify potential departures from any of Citi's
calling policies is contradicted by its policy, which says that the report "is used to show incorrect
account flagging/call handling regarding both the Cease and Desist (C&D) and do not call
(DNC) coding, and Attorney Representation coding (Atty Rep). … [A]n account is deemed an
error when call attempts are made on accounts coded for C&D, proper queue segmentation of
C&D loans and individual numbers coded for DNC." Ex. 12 at 1293.

[5] Citi claims the error reports show it complies with its calling policies 99% of the time. If so,
and if compliance with Citi's policies means that there was no TCPA violation, "that is an
argument not for refusing to certify the class but for certifying it and then entering a judgment
that will largely exonerate" Citi. *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir.
2012), *vacated on other grounds*, 569 U.S. 1015 (2013). The same is true for Citi's contention
that a large percentage of the calls on the reports were not made using the Aspect calling system.

for the phrases Citi says were used when borrowers gave renewed consent. Ex. 6 ¶¶ 64-67, 106.[6]

Citi asserts that it is not required to maintain data in a way that would make it easier for plaintiffs to litigate under the TCPA, but Citi fails to inform the Court that it *did maintain* consent information in a format that lends itself to aggregate proof, but it simply has not yet produced the complete information to Plaintiff in that native, searchable format. *See* Ex. 6 ¶¶ 11, 65, 108. Citi's expert acknowledged this when he admitted ██████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ Ex. 16 at 12:10-20, 46:20–47:2. Citi's expert conceded that ███ ████████████████████████████████████████████████████████ *Id.* at 51:4– 52:1. Citi's expert conceded that ██████████████████████████████████████████ ████████████████████████████████ *Id.* at 52:22–53:1.

Knowing full well that the data it has produced to date is both incomplete and cannot be exported and sorted, Citi argues that Plaintiff's expert should have conducted the types of searches that would have been available had the data been produced in a delimited text table. But Citi must have known that Plaintiff's expert would not have been able to conduct full searches of the data at the class certification stage because it only produced a sample of the data. The point of the sample was so that Plaintiff and his expert could evaluate the data to determine whether it could be searched on an aggregate basis. This is enough at the class certification stage. *See, e.g., Smith v. Ceva Logistic U.S., Inc.*, 2011 WL 3204682, at *2 (C.D. Cal. July 25, 2011) (considering an expert report at class certification that demonstrated how the defendant's database could be used "to determine on a class-wide basis whether putative class members took

---

[6] Plaintiff addresses Citi's challenges to his expert in his opposition to the motion to strike.

meal periods, and for how long"); *Meyer v. Bebe Stores, Inc.*, 2017 WL 558017, at *4 (N.D. Cal. Feb. 10, 2017) (denying motion to decertify where the plaintiff's expert opined that a list of telephone numbers produced by the defendant could be analyzed to determine which would have been sent a text message). If Citi produces the full set (not just a sample) of CitiLink "notes" data in native format, Plaintiff's expert has demonstrated in his report that he can place the information in a delimited table, sort the data by date, and determine the number of calls placed after cease and desist and wrong number flags were placed on the account but before the customer allegedly "reconsented." In this manner, Plaintiff's expert can identify each call placed after a class member purportedly "consented."

Citi cites inapposite cases in which the plaintiffs' experts proposed unworkable damages methodologies. In *Comcast Corp. v. Behrend*, the plaintiffs' expert's proposal used a damages model that did not match the theory of liability. 569 U.S. 27, 37 (2013). In *Parko v. Shell Oil Co.*, the expert proposed to measure contamination in groundwater when class members' water supply came from a separate, uncontaminated aquifer. 739 F.3d 1083, 1086 (7th Cir. 2014). Similarly, *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, involved two proposed methodologies for calculating antitrust damages, but one required a comparable industry when none could be identified and the other lacked a formula and ignored relevant factors. 100 F. App'x 296, 299-300 (5th Cir. 2004). In contrast, Plaintiffs' expert proposed meaningful and workable solutions to determine which calls were consensual and which were not, and his proposals are based upon Citi's records as they are maintained by Citi.

Citi argues that some of its collection agents' "wrong number" designations were incorrect, and that those phone numbers might actually belong to borrowers. Courts have rejected the identical argument. *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 308

- 6 -

(S.D. Cal. 2015) (rejecting defendant's arguments that plaintiff's proposed class definition could be over inclusive because "the term 'wrong number' could appear in an account holder record where an account holder. . . is trying to evade a debt collection by falsely stating defendant's associate has reached a wrong number"). But even if true, there is a common question as to whether, by telling Citi it was calling the wrong number, those borrowers revoked any prior consent they may have given Citi to call their cell phones.[7]

Citi argues that members of the Wrong Number Class cannot be identified. Citi is wrong. Plaintiff's expert Anya Verkhovskaya states that she can find the names and addresses associated with the Wrong Number cell phone numbers using databases with historical information that she uses successfully on a regular basis. *See generally* Ex. E; *see also West v. Cal. Servs. Bureau, Inc.*, 2017 WL 6316823, at *5 n.7 (N.D. Cal. Dec. 11, 2017) (rejecting argument that cell phone owners cannot be identified through reverse lookup databases); *Booth v. Appstack*, 2015 WL 1466247, at *4 (W.D. Wash. Mar. 30, 2015) (same).

Citi also asserts that class members who were called before October 2013 cannot be identified because it "does not have" aggregated Aspect Calling Data prior to that date. Opp. at 26. The notion that Citi — a large company represented by sophisticated counsel — failed to preserve key calling data related to Plaintiffs' claims defies credibility and Citi fails to support this assertion with a declaration or any other record evidence. During discovery, Citi refused to even look to confirm if such data still exists. Terrell Reply Decl. ¶ 3. It is highly likely that it does. Both CitiMortgage and CitiGroup maintain massive data centers in Texas and St. Louis.

Furthermore, Citi's stated policy was to maintain Aspect data in a "dialer database" for

---

[7] In *Davis v. AT&T Corp.*, the plaintiffs defined the class as non-customers at the time of the call, which required an individualized determination. 2017 WL 1155350, at *5 (S.D. Cal. Mar. 28, 2017). Plaintiff's proposed class includes Citi borrowers who told Citi that it called a wrong number and non-borrowers, so no similar process is required.

180 days. Ex. 7 at 19. Older data was available in a Teradata server going back an additional

year so data should have been available for eighteen months in total. *Id.* Tomeo filed his class

action lawsuit against Citi on May 31, 2013 and an amended complaint on August 13, 2013. Ex.

17. Tomeo alleged that he received a call from Citi on April 18, 2013 and then seventeen more

calls over the following week. Ex. 18 ¶¶ 22-29. At a minimum, Citi should have preserved

Aspect data going back to November 2012, which is eighteen months before Tomeo filed his

lawsuit. *See Am. Family Ins. Co. v. Village Pontiac-GMC, Inc.*, 223 Ill. App. 3d 624, 627–28

(1992) (sanctioning party for allowing "the most crucial piece of evidence" in the case to be

destroyed and rejecting argument that there was no prejudice because not all evidence had been

destroyed); *U.S. v. Dish Network, L.L.C.*, 292 F.R.D. 593, 603 (C.D. Ill. 2013) (the duty to

preserve documents exists when the defendant knows evidence might be relevant to an

investigation); *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 288 (N.D. Cal. 2015)

(defendant was on notice of duty to preserve documents when plaintiff filed complaint). Instead,

Plaintiff does not have any data relating to calls placed before Tomeo filed his lawsuit and only

has 22 months of data relating to calls placed after Tomeo sued Citi. Ex. 7 at 19.

That Citi somehow misplaced call records that it should have preserved should not

preclude certification. *See Etter v. Allstate Ins. Co.*, 2017 WL 6594069, at *6 (N.D. Cal. Dec. 26,

2017) ("insofar as defendants are the ones responsible for the absence of more detailed fax

transmission records, they should not benefit from their poor recordkeeping by dodging a class

action on that basis"); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill.

2014) (certifying class of "only to those persons whose membership can be proved by reference

to some other party's records is fundamentally unfair to potential class members" and "would

create an incentive for a person to violate the TCPA on a mass scale and keep no records of its

activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct"). Following certification, Citi could be required to search its data centers for the missing data. *See Lofton*, 308 F.R.D. at 288 (sanctioning defendant for failure to maintain calling data by requiring defendant's expert to find and reconstruct archived files at defendant's cost). If the evidence has been destroyed completely, the jury should be instructed to infer that Citi violated the TCPA between the time it implemented the Aspect UIP dialer in December 2011 and October 2013 to the same extent that it violated the TCPA after October 2013.

      2.    <u>Predominance is satisfied even if Citi's affirmative defense turns in part on individual proof.</u>

Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 469 (2013) (alterations in original) (citation omitted). The "predominance requirement is meant to 'tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation,' but it scarcely demands commonality as to all questions." *Comcast*, 569 U.S. at 39-40 (alterations in original) (citation omitted). As explained above, the class claims can be proven through common evidence, and the classes are designed to narrow the calls at issue to those that were placed without consent.

But even if there are some one-off consensual calls, this does not destroy predominance. As the Supreme Court recently explained, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or affirmative defenses peculiar to some individual class members.'" *Tyson,* 136 S. Ct. at 1045 (citation omitted). *Tyson* confirms that courts may reserve resolution of "affirmative defenses" that require individual proof for proceedings after trial of common issues.

The Seventh Circuit has repeatedly endorsed this approach, explaining that "[a] district court has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010). In *Pella*, trying the common issue of whether the windows were defective on a classwide basis had "the potential to eliminate the need for multiple, potentially expensive expert testimony and proof that would cost considerably more to litigate than the claims would be worth to the plaintiffs." *Id.* at 394. Certification was thus appropriate even though the issue of proximate cause might entail individualized proof. *Id.* In *McMahon v. LVNV Funding, LLC*, the Seventh Circuit reversed denial of class certification even though causation required individualized proof. 807 F.3d 872, 875-76 (7th Cir. 2015). And in *Suchanek v. Sturm Foods, Inc.*, the Seventh Circuit held that the district court committed "error of law" in denying class certification after finding that "showing reliance or causation—as required to establish liability—requires an investigation of each purchaser." 764 F.3d 750, 759 (7th Cir. 2014).

Citi argues that *Suchanek* is distinguishable because there was a predominant common issue (whether the product's packaging was likely to mislead a reasonable consumer) and "individual issues of reliance would be decided later if the plaintiff prevailed on that issue." Opp. at 21 n.10. Citi attempts to distinguish *Butler v. Sears Roebuck & Co.*, 702 F.3d 359 (7th Cir. 2012), and *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014), on similar grounds, arguing that in each case there were overarching common issues as to the defendant's liability. Far from distinguishing these cases, Citi's argument explains why they are right on point. There are predominant common issues as to Citi's liability: whether Citi made telephone calls using an ATDS to cell phones. As in *Pella*,

proof of Citi's liability will turn on common evidence that individuals would not be able to affordably muster on their own behalf, including Citi documents and testimony and the work of multiple experts. Predominance is satisfied.

> 3. **If Citi's affirmative defense of consent turns on information in Citi's files, class certification is manageable.**

The Seventh Circuit has cited "the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Mullins*, 795 F.3d at 663. This is because courts can use a "variety of procedural tools … to manage the administrative burdens of class litigation." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017); *see also Mullins*, 795 F.3d at 669. The procedural tools include appointing a magistrate or special master, bifurcation, or decertification after a finding of liability. *Mullins*, 795 F.3d at 664, 671; *In re Nassau Strip Search Cases*, 461 F.3d 219, 231 (2d Cir. 2006).

Citi argues that a post-trial procedure for addressing its affirmative defense would violate its due process rights but the cases it cites stand for the unremarkable proposition that defendants should be given the opportunity to raise defenses to individual class members' claims. The Seventh Circuit has squarely rejected the argument that due process prohibits handling issues through post-trial procedures: "As long as the defendant is given the opportunity to challenge each class member's claim to recovery during the damages phase, the defendant's due process rights have been protected." *Mullins*, 795 F.3d at 671.

That the parties may need to spend time reviewing Citi's files to determine whether some class members may have consented does not make class certification unmanageable. *See, e.g., Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410, at *10 (N.D. Cal. June 21, 2013) (certifying a class that required the review of records to exclude certain categories of borrowers from the class even though doing so "will entail some effort on the part of counsel for both parties"); *see*

- 11 -

*also Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 539 (N.D. Cal. 2015) (certifying a class whose members could only be identified through a file-by-file review); *see also generally McKeage v. Bass Pro Outdoor World, LLC*, 2014 WL 12754996 (W.D. Mo. Oct. 7, 2014) (describing the plaintiffs' "examin[ation of] the individual customer files to determine if an individual fit within the Court's class definition" following certification of the class). While the Seventh Circuit has agreed that defendants should be afforded due process in class actions, "[i]t does not follow that a defendant has a due process right to a *cost-effective* procedure for challenging every individual claim to class membership." *Mullins*, 795 F.3d at 669. Moreover, the proposed classes in this case are small enough that a review of files is possible. While Plaintiff's expert determined that Citi called 12,269 borrowers after coding their accounts with "cease and desist" or "do not call" and made 11,585 calls to cell phones reported as wrong numbers, Citi contends the classes are even smaller. *See* Ex. 6 ¶ 62; Opp. at 13-14. When courts deny certification because a review of individual files may be necessary, the proposed classes in such cases are typically much larger. *See, e.g., Sandusky*, 863 F.3d at (over 40,000 class members); *Versteeg v. Bennett, Deloney & Noyes, P.C.,* 271 F.R.D. 668, 671 (D. Wyo. 2011) (over 1 million class members).

Before trial, Plaintiff will review the CitiLink data relating to the 12,269 persons Plaintiff's expert identified as having received calls to a cell phone after they told Citi to cease and desist and the 11,505 persons Plaintiff's expert determined received calls to cell phones after a WRNG flag was placed on the account — the very data that Citi concedes will indicate whether calls were placed without a person's consent — to confirm that these individuals received calls to their cell phones without their consent. After Plaintiff performs this work, the trial will be simple. Plaintiff's expert will testify that (1) Citi used an ATDS to (2) place calls to cell phones after a cease and desist or wrong number flag was placed on an account and (3) Citi's

CitiLink data does not indicate that the person consented to the calls. Plaintiff's expert also will testify regarding the total number of calls placed and the total number of unique cell phones to which calls were placed without consent. Citi will then have an opportunity to challenge this testimony—challenges that they agree can be accomplished by reviewing the CitiLink data. In other words, this is *not* a case in which the evidence of consent is in the minds of the class members, requiring all class members to testify at trial. *See Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003, at *7 (D. Ariz. Aug. 12, 2009) ("while this issue may involve a file-by-file review, it will not require a file-by-file trial").

If disputes remain about whether certain class members consented after the trial of the *prima facie* case, the Court may appoint a special master to resolve those disputes. *See, e.g., Krakauer v. Dish Network, LLC*, 2017 WL 3206324, at *7-10 (M.D.N.C. July 27, 2017) (establishing a post-trial procedure for identifying class members that required a claims administrator to resolve any challenges by the defendant to claimants' entitlement to damages); *Allapattah Servs., Inc. v. Exxon Corp.*, 157 F. Supp. 2d 1291, 1323-26 (S.D. Fla. 2001) (ordering a post-trial claims process that allowed the defendant to present defenses to class members' claims), *aff'd*, 333 F.3d 1248 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005). The Seventh Circuit has confirmed that a post-trial process addressing individual class members' right to recover does not impact a defendant's due process rights. *Mullins*, 795 F.3d at 671.

Citi criticizes the approach posited in *Mullins* as "fantasy," but its criticism lacks merit. Plaintiff's expert has designed a method to sort through millions of autodialed calls to find the ones that were placed to cell phones without consent. In response, Citi asserts that class members may have consented to some of the calls because they "re-consented" to calls at some point. But Plaintiff's expert devised a way to handle this too simply by searching Citi's CitiLink records.

- 13 -

*See* Ex. 6 ¶¶ 64-67. Since Citi has agreed that evidence of consent is contained in its records, affidavits from class members will likely not be necessary. Even if they are, Citi's argument that affidavits cannot be used because class members may lie was rejected by the Seventh Circuit, since "courts are not without tools to combat this problem during the claims administration process." *Mullins*, 795 F.3d at 667.

Citi misreads the cases it claims support its argument that courts deny class certification in TCPA cases when determining consent may require a review of the defendant's files. In *Gene & Gene LLC v. BioPay LLC*, for example, the defendant insisted that its records *did not* answer the question of whether the recipients of its fax blasts consented and that "individual inquiries of the recipients are necessary." 541 F.3d 318, 328-29 (5th Cir. 2008). On remand the defendant finally produced the data that would have proved that certification was appropriate, but the Fifth Circuit rather unjustly denied certification based upon the "law of the case" without considering the merits of the withheld discovery. 624 F.3d 698, 702 (5th Cir. 2010).

In most of the other cases Citi relies on the defendant argued that individual trial testimony would be required from every class members. *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 464 (6th Cir. 2017) (defendant did not retain records of the faxes it sent); *Legg v. PTZ Ins. Agency, Ltd.*, 321 F.R.D. 572, 578 (N.D. Ill. 2017) (determining whether animal adopters wanted to receive calls would require "testimony from each individual class member, and the shelter employee who assisted that member in the adoption process"); *Alpha Tech Pet Inc. v. Lagasse, LLC*, 2017 WL 5069946, at *5 (N.D. Ill. Nov. 3, 2017) (defendant acknowledged its records did not accurately record whether fax recipients consented and relied on declarations from fax recipients); *Saulsberry v. Meridian Fin. Servs., Inc.*, 2016 WL 3456939, at *11 (C.D. Cal. Apr. 14, 2016) (individualized inquiries into

what "a consumer may have understood from context" would be required); *Blair v. CBE Group, Inc.*, 309 F.R.D. 621, 630-31 & n.7 (S.D. Cal. 2015) (citing "the extensive individual factual inquiries required" to determine consent of even the named plaintiffs, including deposition testimony); *Balschmiter v. TD Auto Finance LLC*, 303 F.R.D. 508, 527-28 (E.D. Wisc. 2014) (consent would require class member testimony).

Citi's reliance on *Chapman v. First Index, Inc.*, is similarly misplaced because, unlike this case, that defendant provided the court with "uncontroverted evidence" that it obtained consent from *all* the proposed class members before sending them faxes. 2014 WL 840565, at *3 (N.D. Ill. Mar. 4, 2014). In *Jamison v. First Credit Servs., Inc.*, Honda showed that nearly half of the proposed class members had provided consent. 290 F.R.D. 92, 107-08 (N.D. Ill. 2013). Moreover, as Judge Castillo recently observed, *Jamison* "was decided before *Mullins*...." *Toney v. Quality Res., Inc.*, 2018 WL 844424, at *10 (N.D. Ill. Feb. 12, 2018). Citi also cites another old, out of circuit case, *Conrad v. General Motors Acceptance Corp.*, where the plaintiff asserted that consent could be determined from a debt collector's database but failed to explain how. 283 F.R.D. 326, 329-30 (N.D. Tex. 2012). And two of Citi's cases arose in the context of pre-discovery motions to strike class allegations, where the court assumed without analysis that consent would require individualized inquiries. *See Wolfkiel v. Intersections Ins. Servs., Inc.*, 303 F.R.D. 287, 293-94 (N.D. Ill. 2014); *see also Cholly v. Uptain Group*, No. 15 C 5030, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017) (following *Wolfkiel* without analysis).

Citi also rejects the possibility of reducing damages by 15% or 17% to account for the calls its expert contends were made with consent, arguing that it is not possible to tell which class members consented. But Citi would not be prejudiced by this approach since "[t]he addition or subtraction of individual class members affects neither the defendant's liability nor

the total amount of damages." *Mullins*, 795 F.3d at 670. Citi's argument echoes the ascertainability requirement that the Seventh Circuit has rejected. *Id.* at 668; *see also* Opp. to Mot. to Strike Hansen at 5–7.

**B.      A class action is superior to thousands of individual lawsuits.**

When "courts approach the issue as part of a careful application of Rule 23(b)(3)'s superiority standard, they must recognize both the costs and benefits of the class device." *Mullins*, 795 F.3d at 663. Superiority "is comparative: the court must assess efficiency with an eye toward 'other available methods.'" *Id.* at 664 (quoting Rule 23(b)(3)).

Citi concedes it placed calls to customers' cell phones without their consent through an Aspect dialer, which "is, undeniably, an automatic telephone dialing system." *Freeman v. Wilshire Commercial Capital, LLC*, 2018 WL 1173823, at *3 (E.D. Cal. Mar. 6, 2018). But because Citi used its dialers in predictive mode without use of prerecorded messages, it is difficult for the typical consumer to know whether Citi was violating the law. And even those consumers who suspected it might not be permissible for Citi to call them nine times a day likely do not realize that a federal cause of action exists. If these consumers knew they had a colorable claim for relief, with hundreds if not thousands of dollars at stake if they prevailed, suffice it to say that these families and homeowners would seek it for sure. Joinder of tens of thousands of individual suits would be impracticable, and the filing of tens of thousands of suits to adjudicate an identical prima facie case — with experts, discovery battles and the like for every single case — is unthinkable from a judicial and plaintiff perspective.

Citi has not proposed any other method for the effective and efficient resolution of the proposed class members' claims, other than not to certify at all. As the defendant, Citi could use economies of scale, "form" documents, and mirror-image expert reports to defend thousands of individual suits. On the other hand, each consumer would have to start from scratch, hiring

lawyers and experts to prosecute their individual claims. The filing fees alone for 20,000 federal lawsuits is $8,000,000; it costs Citi nothing to be a defendant. Since most class members would not know about the TCPA or bother to bring a lawsuit if they did, the only realistic alternative to certification is no relief at all. *See Toney*, 2018 WL 844424, at *22.

Citi's challenges to superiority are the same as its challenges to predominance, asserting that individual issues are not manageable. But the Seventh Circuit instructs that "refusing to certify on manageability grounds alone should be the last resort." *Mullins*, 795 F.3d at 665. Instead, "a district judge has discretion to (and we think normally should) wait and see how serious the problem may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors." *Id.*

As discussed in detail above, the purportedly individualized issue of consent can be managed for all class members to whom Citi placed calls after October 2013 through review of Citi's Aspect and CitiLink records before trial. For those class members to whom Citi placed calls using the Aspect dialer and then failed to preserve their dialing records—class members to whom Citi placed calls before October 2013—Citi should be required to search its records, including its Texas data warehouse, for the data and certify to the Court that it no longer exists in any form. If the data exists, then the class members can be treated in the same way as those who received calls after October 2013. If the data was not preserved and no longer exists, then notice of any aggregate judgment should be sent to all class members who received calls before October 2013 to give them an opportunity to make a claim. Citi will be allowed to challenge the claims by analyzing the CitiLink records for any evidence of consent. Such a process is fair, efficient, and far better than the alternatives of class members either never finding out that Citi violated the law or being required to pursue expensive individual actions.

**C.**     **Plaintiff's claims are typical and he is an adequate representative of the classes.**

To be typical, the plaintiff's claims must have "the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact." *Id.*

Plaintiff Tomeo is a member of both proposed classes and his claims rest on the same facts and arguments as the other class members. The two classes are not mutually exclusive, as Citi suggests. The Cease and Desist Class consists of persons Citi called after they told Citi not to call them, and is not limited to Citi accountholders. Plaintiff is a member of this class because Citi's records show that Citi called Plaintiff after he told Citi he was not the accountholder and "would like to have his number removed" from the account. Ex. 8. The Wrong Number Class consists of persons Citi called after they told Citi it had the wrong number. Tomeo is also a member of this class because Citi's records show that Citi placed several calls to Tomeo after he told Citi that Citi was calling the wrong number. Terrell Decl. ¶ 20 & Ex. 8.

Plaintiff's claims thus have "the same essential characteristics" as the other class members, and all claims will be proven with the same evidence. Citi's defenses are also not unique to Plaintiff. Citi asserts that it "arguably" had consent to call Plaintiff's cell phone but contends that other class members consented to its calls as well. Citi asserts that Plaintiff incorrectly told Citi it was calling the wrong number but contends that other class members did the same thing. Even if there are some aspects of Citi's defense to Plaintiff's claim that are unique, he is still typical and adequate because his interests are aligned with the other class members: they all want to recover for the same alleged TCPA violations. "Just because there are

defenses unique to the named plaintiffs, however, does not mean that a finding of typicality is automatically precluded, for 'Rule 23(a)(3) mandates the typicality of the named plaintiffs' claims—not defenses.... [I]t is only when a unique defense will consume the merits of a case that a class should not be certified.'" *In re Synthroid Mktg. Litig.*, 188 F.R.D. 287, 291 (N.D. Ill. 1999) (alterations in original) (citation omitted).

This case is not like *CE Design Ltd. v. King Architectural Metals, Inc.*, where the court had "serious doubts" about the truthfulness of the plaintiff's testimony. 637 F.3d 721, 726-28 (7th Cir. 2011). Tomeo stands before the Court in good faith, has been truthful in these proceedings, and wants the same thing for himself and the class: the best relief possible under the TCPA. The other cases Citi cites are also distinguishable.[8]

The seemingly individualized history Citi goes through is a red herring when viewed through the lens of Rule 23, and typicality perhaps focuses the lens most sharply. Plaintiff Tomeo is just like the rest of the proposed classes: Citi's records show that he received automated Aspect calls on his cell phone both (a) after he had told Citi to stop calling and (b) after he had told Citi it was calling the wrong number. Citi was supposed to stop autodialing Tomeo — and everyone else — when it received and logged those statements. Citi did not do so, and that is the crux of the case as to consent. Tomeo is therefore typical, and a superlative class representative.

## III. CONCLUSION

Plaintiff respectfully requests that the Court grant his motion.

---

[8] *See Muro v. Target Corp.*, 580 F.3d 485, 492-93 (7th Cir. 2009) (plaintiff sought to represent a class of persons whose Target Guest Cards were "autosubstituted" by Target Visa cards but the Visa card she received was not a substitute for the Guest Card she had closed many years earlier so she was not a member of the proposed class); *Banarji v. Wilshire Consumer Capital, LLC*, 2016 WL 595323, at *3 (S.D. Cal. Feb. 12, 2016) (court focused on "the circumstances of how the Banarji family looks after one another" and the fact that the plaintiff's father represented that his daughter's cell phone number was his in finding the plaintiff atypical); *Martinez v. Adir Int'l, Inc.*, 2015 WL 12670519, at *6 (C.D. Cal. July 7, 2015) (plaintiff sought to represent a class of customers when she was *not a customer* and her number was in the company's database "by a fluke accident.").

RESPECTFULLY SUBMITTED AND DATED this 13th day of March, 2018.

TERRELL MARSHALL LAW GROUP PLLC

By:    /s/ Jennifer Rust Murray *Admitted Pro Hac Vice*
Beth E. Terrell, *Admitted Pro Hac Vice*
Email:  bterrell@terrellmarshall.com
Jennifer Rust Murray, *Admitted Pro Hac Vice*
Email:  jmurray@terrellmarshall.com
Mary B. Reiten, *Admitted Pro Hac Vice*
Email:  mreiten@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Alexander H. Burke
Email:  aburke@burkelawllc.com
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

Syed Ali Saeed
Email:  ali@sllawfirm.com
SAEED & LITTLE, LLP
1433 North Meridian Street, Suite 202
Indianapolis, Indiana 46202
Telephone: (317) 614-5741
Facsimile: (888) 422-3151

*Attorneys for Plaintiffs Joseph Morden, Pamela
Slaughter, and Frank Lopez and the Proposed Classes*

Adam J. Levitt
Email:  alevitt@dlcfirm.com
Amy E. Keller
Email:  akeller@dlcfirm.com
DICELLO LEVITT & CASEY LLC
10 North Dearborn Street, 11th Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

Sergei Lemberg
Email: slemberg@lemberglaw.com
LEMBERG & ASSOCIATES
1100 Summer Street, Third Floor
Stamford, Connecticut 06905
Telephone: (203) 653-2250
Facsimile: (203) 653-3424

*Attorneys for Plaintiff Eduardo Tomeo and the Proposed Classes*

<u>CERTIFICATE OF SERVICE</u>

I, Jennifer Rust Murray, hereby certify that on March 13, 2018, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

> Alejandro Valle, Indiana Attorney #22863-49
> CITIZENS ENERGY GROUP
> 2020 N. Meridian Street
> Indianapolis, Indiana 46202
> Telephone: (317) 987-6986
> Email: avalle@citizensenergygroup.com
>
> Hans J. Germann
> Email: hgermann@mayerbrown.com
> Debra Bogo-Ernst
> Email: dernst@mayerbrown.com
> Lucia Nale
> Email: lnale@mayerbrown.com
> Joseph M. Snapper
> Email: jsnapper@mayerbrown.com
> Michael H. Bornhorst
> Email: mbornhorst@mayerbrown.com
> MAYER BROWN LLP
> 71 South Wacker Drive
> Chicago, Illinois 60606
> Telephone: (312) 782-0600
> Facsimile: (312) 701-7711
>
> *Attorneys for Defendants*

DATED this 13th day of March, 2018.

> TERRELL MARSHALL LAW GROUP PLLC
>
> By:   /s/ Jennifer Rust Murray, *Admitted Pro Hac Vice*
>         Jennifer Rust Murray, *Admitted Pro Hac Vice*
>         Email: jmurray@terrellmarshall.com
>         936 North 34th Street, Suite 300
>         Seattle, Washington 98103-8869
>         Telephone: (206) 816-6603
>         Facsimile: (206) 319-5450
>
> *Attorneys for Plaintiffs Joseph Morden, Pamela*
> *Slaughter, and Frank Lopez and the Proposed Classes*

- 22 -