IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EDUARDO TOMEO; JOSEPH MORDEN;
PAMELA SLAUGHTER; and FRANK
LOPEZ, individually and on behalf of all
others similarly situated,

               Plaintiffs,

     v.

CITIGROUP, INC. and CITIMORTGAGE,
INC.,

               Defendants.

No. 1:13-cv-04046

Hon. Sara L. Ellis

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE THE EXPERT REPORT AND REBUTTAL
EXPERT REPORT OF JEFFREY A. HANSEN**

## TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION .......................................................................................... 1

II.    AUTHORITY AND ARGUMENT ............................................................... 2

       A.    The Court should reject Defendants' back-door attempts to challenge
             the ascertainability of the Classes proposed by the Plaintiff based upon
             consent ................................................................................................... 4

       B.    Mr. Hansen's methodology is sound, and not unlike methodology
             adopted by courts in other cases .......................................................... 9

       C.    Citi's own expert agrees that its dialing systems are ATDSs, and
             courts have held that Aspect and Genesys dialing systems are ATDSs ............ 13

       D.    Citi is not prejudiced by Mr. Hansen's rebuttal report; it was able to
             depose Mr. Hansen, and respond to his report in its motion to strike................. 14

III.   CONCLUSION............................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page No.**

### FEDERAL CASES

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
No. 15-cv-6314-YGR, 2017 WL 1806583 (N.D. Cal. May 5, 2017) ........................ 7, 12

*Abdeljalil v. Gen. Elec. Capital Corp.*,
306 F.R.D. 303 (S.D. Cal. 2015) ................................................................................ 5

*Baker v. Indian Prairie Cmty. Unit, Sch. Dist. 204,*
No. 96 C 3927, 1999 WL 988799 (N.D. Ill. Oct.27, 1999) .............................................. 9

*BASF Corp. v. Aristo, Inc.,*
No. 2:07 CV 222 PPS, 2012 WL 2529213 (N.D. Ind. June 29, 2012) ......................... 10

*Bielskis v. Louisville Ladder, Inc.,*
663 F.3d 887 (7th Cir. 2011) ..................................................................................... 10

*Blair v. CBE Group, Inc.*,
309 F.R.D. 621 (S.D. Cal. 2015) ................................................................................. 15

*Booth v. Appstack, Inc.*,
No. C13-1533JLR, 2016 WL 3030256 (W.D. Wash. May 25, 2016) ........................ 9, 10

*Brand v. Comcast Corp., Inc.,*
203 F.R.D. 201 (N.D. Ill. 2014) .................................................................................. 13

*C.W. ex rel. Wood v. Textron, Inc.*,
807 F.3d 827 (7th Cir. 2015) ....................................................................................... 2

*Chapman v. Maytag Corp.*,
297 F.3d 682 (7th Cir. 2002) ....................................................................................... 3

*Charvat v. Allstate Corp.*,
29 F. Supp. 3d 1147 (N.D. Ill. 2014) ........................................................................... 4

*City of Gary v. Shafer*,
No. 2:07-CV-56-PRC, 2009 WL 1370997 (N.D. Ind. May 13, 2009) .......................... 14

*Computer Assocs. Int'l v. Quest Software, Inc.,*
333 F. Supp. 2d 688 (N.D. Ill. 2004) .......................................................................... 11

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)..................................................................................................... 2, 3

*Freeman v. Wilshire Com. Capital. LLC*,
    2018 WL 1173823 (E.D. Cal. Mar. 6, 2018) ................................................ 14

*G.M. Sign Inc. v. Stealth Sec. Sys., Inc.*,
    No. 14 C 09249, 2017 WL 3581160 (N.D. Ill. Aug. 18, 2017)........................7

*Ginwright v. Exeter Fin. Corp.*,
    280 F. Supp. 3d 674 (D. Md. 2017) ............................................................. 14

*Goldberg v. 401 N. Wabash Venture LLC*,
    No. 09 C 6455, 2013 WL 1624989 (N.D. Ill. Apr. 15, 2013)........................ 10

*Gopalratnam v. Hewlett–Packard Co.*,
    877 F.3d 771 (7th Cir. 2017) ................................................................... 2, 3

*Harrington v. Richter*,
    131 S. Ct. 770 (2011) ................................................................................. 10

*Jacobs v. Quicken Loans, Inc.*,
    No. 15-81386-CIV, 2017 WL 4838567 (S.D. Fla. Oct. 19, 2017) .............. 7, 8

*Johnson v. Navient Sol'ns, Inc.*,
    315 F.R.D. 501 (S.D. Ind. 2016).................................................................. 6

*Jordan v. City of Chi.*,
    No. 08 C 6902, 2012 WL 254243 (N.D. Ill. Jan.27, 2012) ........................... 10

*King v. Time Warner Cable*,
    113 F. Supp. 3d 718 (S.D.N.Y. 2015).......................................................... 12

*Lapsley v. Xtek, Inc.*,
    689 F.3d 802 (7th Cir. 2012). ..................................................................... 3

*Legg v. Voice Media Grp., Inc.*,
    No. 13-62044, 2014 WL 1767097 (S.D. Fla. May 2, 2014).......................... 11

*Lowe v. CVS Pharmacy, Inc.*,
    No. 14 c 3687, 2017 WL 2152385 (N.D. Ill. May 17, 2017) ........................ 15

*Manpower, Inc. v. Ins. Co. of Pa.*,
    732 F.3d 796 (7th Cir. 2013) ............................................................. 3, 11, 13

*Mohamed v. Am. Motor Co., LLC,*
    No. 15-23352, 2017 WL 4310757 (S.D. Fla. Sept. 28, 2017) ........................................ 11

*Mullins v. Direct Digital, LLC,*
    795 F.3d 654 (7th Cir. 2015) ..................................................................................... 6, 7

*Nelson v. Santander Consumer USA,*
    931 F. Supp. 2d 919 (W.D. Wis. 2013) .......................................................................... 14

*Olney v. Job.com,*
    No. 12-cv-01724-LJO, 2014 WL 5430350 (E.D. Cal. Oct. 24, 2014)...........................15

*Robinson v. Green Tree Servicing, LLC,*
    No. 13 CV 6717, 2015 WL 4038485 (N.D. Ill. June 26, 2015)................................ 13, 14

*S.W. v. City of New York,*
    No. CV 2009-1777 (ENV)(MDG), 2011 WL 3038776 (E.D.N.Y. July 25, 2011) .......... 4

*Solaia Tech. LLC v. ArvinMeritor, Inc.,*
    361 F. Supp. 2d 797 (N.D. Ill. 2005) ................................................................................ 9

*Strauss v. CBE Grp., Inc.,*
    No. 15-62026-CIV, 2016 WL 2641965 (S.D. Fla. Mar. 23, 2016) ................................ 13

*Swaney v. Regions Bank,*
    No. 2:13-CV-00544-JHE, 2015 WL 12751706 (N.D. Ala. July 13, 2015)..................... 13

*Toney v. Quality Resources, Inc.,*
    No. 13 C 42, 2018 WL 844424 (N.D. Ill. Feb. 12, 2018)........................................*Passim*

*Ung v. Universal Acceptance Corp.,*
    No. CV 15-127 (RHK/FLN), 2016 WL 9307196 (D. Minn. July 6, 2016)..................... 15

*United States v. Bonds,*
    12 F.3d 540 (6th Cir. 1993) ............................................................................................ 11

*West v. California Servs. Bureau, Inc.,*
    No. 16-cv-3124-YGR, 2017 WL 6316823 (N.D. Cal. Dec. 11, 2017)............................. 6

*Zaklit v. Nationstar,*
    No. 15-2190, 2017 WL 3174901 (C.D. Cal. July 24, 2017)............................................. 9

## FEDERAL RULES

Fed. R. Evid. 702 ...................................................................................................................... 10

## OTHER AUTHORITIES

2012 FCC Order, 27 F.C.C.R., 15392 ........................................................................ 13

Fed. R. Evid. 702, advisory committee notes (2000 Amendments) ............................. 3

# I. INTRODUCTION

Defendants Citigroup Inc. and CitiMortgage, Inc. ("Defendants" or "Citi") attempt to escape liability for repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)-(c) ("TCPA"), by—among other things—reframing their challenge to Plaintiff's class certification motion as an attack on Plaintiff's expert. But Citi's criticisms either go to the *weight* to be afforded to Plaintiff's expert, or are classwide issues capable of common resolution.

Jeffrey Hansen is a consultant in the private sector who advises companies using automated dialers. He has an extensive background and expertise in the area of evaluating and analyzing electronic data related to outbound calls, electronic systems and/or telephone dialing systems, analyzing telephone dialing systems, and wireless and wireline communications. Hansen Report ¶¶ 5-7. He has served as an expert witness or consultant in more than 100 TCPA class action lawsuits, and as an expert, he has configured, maintained, and operated automated dialers. *Toney v. Quality Resources, Inc.*, No. 13 C 42, 2018 WL 844424, at *7 (N.D. Ill. Feb. 12, 2018). He has, himself, set up and maintained automated dialers capable of generating over one million calls per hour, and has trained others on how to use and maintain such systems. *Id.* Mr. Hansen has considerable experience using outgoing call lists in the telemarketing industry and how to use cell block identifier and ported number lists to identify phone numbers that are associated with a cell phone. *Id.* He has been deemed qualified by a number of courts to provide expert testimony in TCPA cases. *Id.* Not surprisingly, Citi does not challenge Mr. Hansen's qualifications to provide expert testimony in this case.

Plaintiffs employed Mr. Hansen, in part, to analyze the telephone dialing systems that were used to place calls to Plaintiffs and class members in this case. Hansen Rebuttal ¶ 1 (attached to Class Cert. Reply as Ex. 6). Specifically, Mr. Hansen was asked to evaluate

electronic data related to those calls to determine whether any of the calls were placed to cell phones and, if so, to identify calls placed to cell phones (1) that had been flagged WRNG by Citi's own recordkeeping policies; (2) after a "cease and desist" flag had been placed on the account; or (3) after a "998" flag had been placed on the account. Hansen Rebuttal ¶ 2. After providing testimony with specific analysis of Citi's files and electronic data, Mr. Hansen also reviewed and provided responses to the expert reports of Ken Sponsler and John Taylor, and their criticisms of Mr. Hansen's report. *Id.*

Defendants do not attack Mr. Hansen's qualifications as an expert witness to provide these opinions; rather, they argue that he has not employed a reliable methodology to support his findings regarding his analysis of Citi's files. Citi makes a number of arguments, largely supported by the late (and unexpected) filing of a sur-rebuttal report by Mr. Taylor, which largely parrot its legal arguments as to why Plaintiff's proposed Classes cannot be certified. But days after Citi filed its motion to strike Mr. Hansen's opinion testimony, this Court issued a ruling that Mr. Hansen's opinions in another, similar case—utilizing similar methodology and providing opinion and testimony against Citi's same expert, here—were admissible and met the standards of Federal Rule of Evidence 702. *Toney*, 2018 WL 844424, at *8. The rationale employed by the Court in *Toney* is applicable in this case, as well.

## II. AUTHORITY AND ARGUMENT

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the standard promulgated by the Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *See C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). "In performing its gatekeeper role under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony." *Gopalratnam v. Hewlett–Packard Co.*,

877 F.3d 771, 779 (7th Cir. 2017) (citation and internal quotation marks omitted). "[T]he district court must evaluate: (1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Id.* (emphasis in original). In this case, Citi has only challenged the reliability of Mr. Hansen's methodology.[1]

"A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). "If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Id.* (quoting *Daubert*, 509 U.S. at 596). While the Court is given "wide latitude in performing its gatekeeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable," *id.* (citation omitted), "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee notes (2000 Amendments). "The district court usurps the role of the jury, and therefore abuses its discretion, if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013). "The focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). Along those lines, "'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Toney*, 2018 WL 844424, at *8 (citation omitted).

---

[1] As discussed above, Plaintiff's expert has substantial experience in this field, and has proffered expert testimony in over 100 TCPA cases. He is abundantly qualified to render an opinion, here. Citi does not dispute the relevance of his opinion.

A.   **The Court should reject Defendants' back-door attempts to challenge the ascertainability of the Classes proposed by the Plaintiff based upon consent.**

As a preliminary matter, Citi's argument that Mr. Hansen's report is "not helpful" because "it fails to offer a common method for determining consent" places the burden of disproving consent—incorrectly—on the plaintiff. Citi Mem. at 8. According to Citi, relying on a product liability decision from this Court, if an expert in a TCPA case does not provide a methodology to determine consent for each class member, then that expert's opinion must be excluded. *Id.* But Citi is wrong: "prior express consent under the TCPA is an affirmative defense on which the defendant bears the burden of proof; it is not a required element of the plaintiff's claim." *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014) (quotation marks and citation omitted).

Mr. Hansen did not need to anticipate every single one of Citi's defenses in rendering his expert opinion, but in response to Citi's experts, Mr. Hansen provided testimony regarding the use of Citi's own files to demonstrate a determination of consent on a class-wide basis in his rebuttal report. *See S.W. v. City of New York*, No. CV 2009-1777 (ENV)(MDG), 2011 WL 3038776, at *4 (E.D.N.Y. July 25, 2011) ("the rules do not require an expert to anticipate every argument made by an opposing expert or risk preclusion."). Determining whether Citi had prior express consent to call individual accountholders can be done "easily by comparing the list of consent calls with the lists [Hansen] generated and then excluding any calls that match both lists." Hansen Rebuttal ¶ 63. As Citi's own expert demonstrates through his analysis, and as Mr. Hansen explains in his rebuttal, determining consent from Citi's own database is a fairly straightforward process. Hansen Rebuttal ¶¶ 64-66. There is simply no need to conduct the "labor-intensive" analysis that Citi's expert elected to conduct as part of his analysis (Citi Mem.

- 4 -

at 9-10); as Mr. Hansen explains, Citi's expert could have easily imported the Citilink database into a Microsoft Excel file,[2] and then simply sorted that data. *Id.*

Citi attempts to shoehorn an ascertainability argument into its motion to strike, arguing that some individuals included in the wrong number class that Citi hounded with repeated calls might have been trying to "duck[] collection calls—responding to a call by saying 'wrong number' in order to postpone a difficult conversation to another day." Citi Mem. at 9. *See Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 308 (S.D. Cal. 2015) (rejecting defendant's arguments concerning ascertainability—including that plaintiff's proposed class definition could be over- or under- inclusive because "the term 'wrong number' could appear in an account holder record where an account holder. . . is trying to evade a debt collection by falsely stating defendant's associate has reached a wrong number"). Citi makes the same argument for the Cease and Desist Class, and asks that the Court excuse the thousands of phone calls it made to individuals without regard to ensuring that it had consent based upon hypothetical arguments that some individuals were trying to avoid a debt collector, and that other individuals "frequently change their minds, revoking consent at one point, but subsequently re-

---

[2] Microsoft Excel is capable of opening files saved in .csv (comma separated values) format. *See* Import or export text (.txt or .csv) files, Microsoft, https://support.office.com/en-us/article/import-or-export-text-txt-or-csv-files-5250ac4c-663c-47ce-937b-339e391393ba (last accessed Mar. 10, 2018).

Citi's data was not provided to the Plaintiffs in native format. Instead, Citi insisted that Plaintiffs sign an agreement precluding them from conducting meaningful queries on Citi's "notes" fields in its database. As the data was produced, Mr. Hansen cannot sort and search it, but he could in its native format if provided the data that way in preparation for trial.

Citi's argument, that Mr. Hansen's methodology differs from his expert report in *Snyder v. Ocwen Loan Servicing*, No. 14-cv-08461 (N.D. Ill.) shows Citi's fundamental misunderstanding of how searches could be run. Neither this case nor *Ocwen* involve methodology that utilizes "open-ended keyboard searches." Mr. Hansen gave examples of how searches in this case could be easily, and quickly, performed. *See* Hansen Rebuttal ¶¶ 11, 70, 105, 106, 181.

consenting" to receiving calls from Citi. Citi Mem at 11. But Citi's arguments should be rejected for at least three reasons.

First, there is no requirement in the Seventh Circuit that plaintiffs are required to ascertain each and every specific class member by name, as Citi seems to suggest in its argument. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669 (7th Cir. 2015) (explicitly rejecting a "heightened ascertainability" requirement in this Circuit, and ruling that—to address concerns like Citi has, here—a court can rely on "self-identifying affidavits, subject as needed to audit and verification procedures and challenges, to identify class members."). Rather, Plaintiff has defined the classes "clearly and with objective criteria." *Id.* at 672. *See also Toney*, 2018 WL 844424, at **9-10 ("Whether a class is ascertainable depends on 'the adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class.' . . . [T]his inquiry does not require. . . demonstrat[ing] that 'there is a "reliable and administratively feasible" way to identify all who fall within the class definition.'" (quoting *Mullins*, 795 F.3d at 657-58)). *See also* Class Cert. Reply at 9-10.

Second, opinions more recent than the *Davis* decision cited by Citi (Citi Mem. at 9) have rejected these arguments. *See, e.g., West v. Calif. Servs. Bureau, Inc.*, No. 16-cv-3124-YGR, 2017 WL 6316823, at *4 (N.D. Cal. Dec. 11, 2017). In *West*, the court rejected a similar argument (as well as the rationale in the *Davis* case) and found that Jeffrey Hansen—Plaintiffs' expert in *this* case, as well—provided testimony to "resolve consent issues on a classwide basis." *Id.* at *5. *See also Johnson v. Navient Sol'ns, Inc.*, 315 F.R.D. 501, 503 (S.D. Ind. 2016) (certifying class over argument that "every record marked as a wrong number may not have actually been a wrong number"); *Abdeljalil*, 306 F.R.D. at 308 (S.D. Cal. 2015) ("class members likely can be determined by objective criteria based on defendant's business records and the class

- 6 -

members will likely be able to identify whether they received prerecorded calls from defendant.").  Indeed, if any class member is included who should not be included—either because the class member was incorrectly listed as a "wrong number" or because the class member had renewed consent—Citi "will still have the opportunity at the damages phase to remove class members" who should not receive damages.  *G.M. Sign Inc. v. Stealth Sec. Sys., Inc.*, No. 14 C 09249, 2017 WL 3581160, at *3 (N.D. Ill. Aug. 18, 2017).  Any concern regarding over-inclusiveness of the Classes can be cured by affidavits to ensure that Citi's due process rights are protected.  *Mullins*, 795 F.3d at 669.[3]  *See also* Class Cert. Reply at 11-12.

Third, Citi's arguments do not defeat predominance, and Mr. Hansen has done far more than offer that he "intends" to demonstrate certain issues via classwide proof at trial.  Citi Mem. at 12.  Hansen's expert opinion provides actual analysis of Citi's records—identifying calls made to cell phone numbers that were coded as wrong numbers, and calls made to cell phone numbers of class members who revoked consent.  And Citi's reliance on case law regarding whether a party has satisfied its burden under Rule 23 is not instructive in a Court's *Daubert* analysis.  Citi Mem. at 12.  To support its argument, Citi discusses two instances in which Mr. Hansen's opinions were previously excluded—*Jacobs v. Quicken Loans, Inc.*, No. 15-81386-CIV, 2017 WL 4838567 (S.D. Fla. Oct. 19, 2017), and *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-cv-6314-YGR, 2017 WL 1806583 (N.D. Cal. May 5, 2017), *amended sub nom.* No. 15-CV-06314-YGR, 2018 WL 558844 (N.D. Cal. Jan. 25, 2018); however, both cases involve different work and opinions than those rendered here.

---

[3] Citi doubles down on its consent arguments when discussing the supposed "flaws" in Mr. Hansen's methodology via a late-filed declaration from Citi's expert John Taylor.  Citi Mem. at 16.  But as the case law demonstrates, the issue of consent is a class-wide issue for both Classes, and any outliers who should not be included can be easily dealt with by affidavit.  *See also* Class Cert. Reply at 16 (discussing the reduction of damages to account for potential issues regarding consent).

In *Jacobs*, as noted by the court, "the purpose of the telephone calls [made by the defendant] varied." 2017 WL 4838567, at *3. Accordingly, this made the determination of consent for each call important because "the trier of fact must determine whether each challenged call was made for a telemarketing purpose." *Id.* In *Jacobs*, the defendant was able to demonstrate—with *actual* evidence—that the purpose of the calls varied by individual class members. *Id.* Accordingly, Mr. Hansen's testimony was excluded because of the *actual* predominating problem that existed with consent—not the manufactured issue tied to ascertainability that Citi asserts, here.

In *Abante*, Mr. Hansen described the analysis that he *would* conduct if the case was certified and proceeded to trial. Importantly, the plaintiffs in that matter asserted that Mr. Hansen did not have to conduct a full expert report at the class certification phase—accordingly, Mr. Hansen's opinions were set forth in a total of three and a half pages.[4] Here, Mr. Hansen submitted over 75 pages of written opinions. And Defendants acknowledge that Mr. Hansen has examined company data. Citi Mem. at 13. This is not an instance where Mr. Hansen has failed to perform any analysis in advance of class certification.

Notably, Citi does not discuss the numerous cases in which challenges to Mr. Hansen's opinions or methodology were rejected. Most notably, on February 12 of this year, this Court rejected a similar challenge to Mr. Hansen that Citi is making here—that Mr. Hansen's methodology was flawed because failed to provide a mechanism by which to identify individual class members. In *Toney*, 2018 WL 844424, at **5-9, Ken Sponsler (who serves as Citi's expert in this case) challenged Mr. Hansen's ability to "match a particular person to a particular phone

---

[4] Mr. Hansen's report in that case, for the Court's reference, is attached hereto as Exhibit 1. In that case, the Court credited the analysis and denied defendant's motion to strike the declaration of Rachel Hoover. 2017 WL 1806583, at **5-6. Ms. Hoover assisted Mr. Sponsler in this case, as noted by the Defendants in their criticism of Mr. Hansen's report.

number"—but the Court (appropriately) held that such a challenge would go to the weight of Mr. Hansen's testimony—not its admissibility. *Id.* at \*\*8-9. *See also Zaklit v. Nationstar*, No. 15-2190, 2017 WL 3174901, at \*12 (C.D. Cal. July 24, 2017) (accepting Mr. Hansen's report showing unique cell phone numbers called during the class period); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at \*11 (W.D. Wash. May 25, 2016), *order clarified by*, No. C13-1533JLR, 2016 WL 3620798 (W.D. Wash. June 28, 2016) (finding that the plaintiffs established, on summary judgment, that the defendant placed 601,207 calls to cell phone based on Hansen's methodology of comparing outgoing calls to "to a cell block identifier list. . . and to ported number lists[.]").

## B. Mr. Hansen's methodology is sound, and not unlike methodology adopted by courts in other cases.

Citi bases the majority of its criticism of Mr. Hansen's on a 32-page unauthorized sur-rebuttal of John Taylor. Mr. Taylor's sur-rebuttal is procedurally improper and should be disregarded by the Court—Defendants never moved to extend the deadline by which to file such a report, supplement their expert reports, or to submit a sur-rebuttal. In short, the sur-rebuttal is late and prejudices Plaintiff in that it provides them with no opportunity to respond or to depose Mr. Taylor.[5] *See Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 806–07 (N.D. Ill. 2005) (striking new opinions from consideration after the deadline for submission of rebuttal reports had passed); *Baker v. Indian Prairie Cmty. Unit, Sch. Dist. 204,* No. 96 C 3927, 1999 WL 988799, at \*1–3 (N.D. Ill. Oct.27, 1999) (striking new expert opinions offered after close of discovery).

But even if the Court were to find that Mr. Taylor's sur-rebuttal is procedurally proper, it provides no basis to exclude Mr. Hansen's expert report. Mr. Taylor's criticisms—at best—go

---

[5] Whereas, on the other hand, Citi was able to depose Plaintiffs' experts on numerous occasions.

to the weight of Mr. Hansen's report and not its admissibility. *See* Fed. R. Evid. 702; *Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 WL 1624989, at *5 (N.D. Ill. Apr. 15, 2013), aff'd, 755 F.3d 456 (7th Cir. 2014) (finding that when expert utilized experience and assumed facts, which were flawed, in rendering his opinion, the flaws "go to the weight the jury affords the testimony, not to its admissibility."). Indeed, "admissibility" under *Daubert* is different from the weight that a jury could afford to expert testimony, and perceived witnesses in expert testimony should be explored "through vigorous cross examination at trial," not keeping that testimony out, altogether. *Jordan v. City of Chi.,* No. 08 C 6902, 2012 WL 254243, at *9 (N.D. Ill. Jan.27, 2012); *BASF Corp. v. Aristo, Inc.,* No. 2:07 CV 222 PPS, 2012 WL 2529213, at *5 (N.D. Ind. June 29, 2012) ("It is for the jury to decide the correctness of the facts that underlie each of these experts' opinions."). *See also Harrington v. Richter,* 131 S. Ct. 770, 792 (2011) ("In many instances cross-examination will be sufficient to expose defects in an expert's presentation."); *Bielskis v. Louisville Ladder, Inc.,* 663 F.3d 887, 894 (7th Cir. 2011) ("We have recognized that 'shaky' expert testimony may be admissible, subject to attack on cross-examination."). When presented with similar perceived flaws in Mr. Hansen's testimony by Mr. Sponsler in a previous case, this Court did not exclude Mr. Hansen's testimony, and noted that the question of the weight to be afforded to his testimony should go to the jury. *Toney*, 2018 WL 844424, at *8. The same should be true, here.

Mr. Taylor criticizes Mr. Hansen for not running even further to ground that the phone numbers in Citi's database were cell phone numbers and not land lines. Taylor Decl. ¶¶ 67-72; Citi Mem. at 14. But Mr. Hansen relies upon the same databases as the FTC, and this Court has already rejected this argument. *See Toney*, 2018 WL 844424, at 9. Mr. Hansen's methodology is well-accepted. *Booth*, 2016 WL 3030256, at *3. Defendants' own expert has testified in other

cases that the databases Mr. Hansen used are accurate and reliable. *See* Exhibit 2 (Expert Report by John Taylor in *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.* (N.D. Cal.).

Citi also criticizes Mr. Hansen because he did not "physically inspect Citi's dialing systems." Citi Mem. at 17. But Citi relies upon a case where companies had *custom* equipment created for the purpose of making calls or sending text messages. *Mohamed v. Am. Motor Co., LLC*, No. 15-23352, 2017 WL 4310757, *4 (S.D. Fla. Sept. 28, 2017); *Legg v. Voice Media Grp., Inc.*, No. 13-62044, 2014 WL 1767097, at *4 (S.D. Fla. May 2, 2014). Here, Aspect is an off-the-shelf system, with which Mr. Hansen has experience. And there is no evidence in the record that Citi customized the equipment.

Concerning Mr. Taylor's criticism regarding computational errors, Taylor Decl. ¶¶ 9-20, 33-57, again, those issues go to the *weight* afforded to Mr. Hansen's opinion testimony, and can be cured in any event. *See Computer Assocs. Int'l v. Quest Software, Inc.,* 333 F. Supp. 2d 688, 694–95 (N.D. Ill. 2004) (mathematical and typographical errors in expert's report, which he admitted at his deposition, went to weight, not admissibility). *See also United States v. Bonds*, 12 F.3d 540, 561 (6th Cir. 1993) ("Disputes about specific techniques used or the accuracy of the results generated go the weight, not the admissibility[,] of the scientific evidence.").

Citi's assertions that Mr. Hansen changed his methodology, or "for the first time" in his rebuttal report employed questionable methodology that was "flawed at every step," are nothing short of hyperbole. Mr. Hansen refined his analysis, but his analysis has always relied upon input from *Citi's own files*. These questions should be left to the jury. *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 808 (7th Cir. 2013) ("[A]rguments about how the selection of data inputs affect the merits of the conclusions produced by an accepted methodology should normally be left to the jury."). This is particularly true when Citi's own internal documents

reveal a conflict between policy procedures and protocols and the possibility that those procedures and protocols were ignored. *See* Class Cert. Mot., Ex. 12.

Further, Mr. Taylor's assertion that the vast majority of phone calls were not TCPA violations is just plain wrong. First, Citi's assertion that Mr. Hansen did not cull out "not completed" calls is contrary to the TCPA—which does not require the calls to be answered. *King v. Time Warner Cable*, 113 F. Supp. 3d 718, 725 (S.D.N.Y. 2015) (defendant "violated the statute each time it placed a call using its ATDS without consent, regardless of whether the call was answered by a person, a machine, or not at all."). Although Citi's files contain attempt errors that were non-Aspect calls, Mr. Hansen compared those errors against the Aspect data so that the information he gleaned from Citi's files regarding TCPA violations would be accurate. *See* Hansen Rebuttal ¶ 87. Indeed, the numerous steps Mr. Hansen took to ensure that the data he obtained from Citi contained an accurate list of alleged TCPA violations demonstrates the diligence in performing the identified methodology. To the extent Citi disagrees with the results, it is free to vigorously cross examine Mr. Hansen in front of a jury.

That Mr. Hansen asked Rachel Hoover to carry out the queries noted in his rebuttal report (or be a "second set of eyes") is not a basis to exclude his opinions, either. As the *Abante* case demonstrates, Ms. Hoover is capable of performing the analysis and tabulation found in Mr. Hansen's rebuttal report. *Abante*, 2017 WL 1806583, at **5-6. Citing to no case law, Citi argues that the mere fact that Mr. Hansen had assistance in preparing his report makes the methodology unreliable so much so that it should be excluded. Citi Mem. at 16. But Rule 26(a)(2) "does not suggest that an expert cannot appropriately rely upon others to help [in preparing his report], and it would be unrealistic to conclude otherwise. The Seventh Circuit has said there is 'nothing remarkable about a paid expert preparing a report with the assistance of

staff.'" *Brand v. Comcast Corp., Inc.*, 203 F.R.D. 201, 215 (N.D. Ill. 2014) (quoting *Manpower*, 732 F.3d at 810). And any computational errors that occurred as a result of Ms. Hoover's assistance—again—go to the weight the jury may afford to the expert's opinions. *Manpower*, 732 F.3d at 808.

### C. Citi's own expert agrees that its dialing systems are ATDSs, and courts have held that Aspect and Genesys dialing systems are ATDSs.

Citi next takes the remarkable position that Mr. Hansen's opinions regarding the Aspect and Genesys dialing systems should be excluded because they are "legal opinions." Citi Mem. at 17. But Mr. Hansen is merely opining about the specific attributes of Citi's ATDS system, leaving the ultimate legal question to the Court to resolve. Even if the Court decides to strike that specific portion of Mr. Hansen's opinion,[6] Lori Mann, a project manager for Citi and Citi's Rule 30(b)(6) corporate designee, agrees that Citi's systems constitute ATDSs. *See* Class Cert Mem. Ex. 5 at 26:22-28:3 (Aspect dialer has a predictive mode). Ultimately, whether the Aspect or Genesys dialing systems are, indeed, ATDSs is a key common question for both Classes that can be resolved either at summary judgment or at trial for all Class members.

The FCC has repeatedly explained that the statutory definition of ATDS covers any equipment that has the *capacity* to generate numbers and dial them without human intervention, "regardless of whether the numbers called are randomly or sequentially generated or *come from calling lists*." 2012 FCC Order, 27 F.C.C.R. at 15392, ¶ 2 n. 5 (emphasis added). Citi conveniently ignores cases in this Circuit where the courts have recognized that the types of dialing systems it uses are ATDSs within the scope of the TCPA. *See Robinson v. Green Tree*

---

[6] Notably, the Court in *Strauss v. CBE Grp., Inc.*, No. 15-62026-CIV, 2016 WL 2641965 (S.D. Fla. Mar. 23, 2016) only struck a portion of Mr. Hansen's testimony. *Id.* at *2. Same for *Swaney v. Regions Bank*, No. 2:13-CV-00544-JHE, 2015 WL 12751706, at *4 n.5 (N.D. Ala. July 13, 2015), *objections sustained*, No. 2:13-CV-00544-JHE, 2015 WL 12765877 (N.D. Ala. Nov. 18, 2015).

*Servicing, LLC*, No. 13 CV 6717, 2015 WL 4038485, at \*\*3-4 (N.D. Ill. June 26, 2015) (denying summary judgment on TCPA claim for calls made manually on Aspect predictive dialer, which had the "requisite capacity to act as an ATDS" as construed by the FCC"); *Nelson v. Santander Consumer USA*, 931 F. Supp. 2d 919, 928 (W.D. Wis. 2013), *vacated by stipulation of parties* 2013 WL 5377280, at \*1 (W.D. Wis. June 7, 2013). *See also Freeman v. Wilshire Com. Capital. LLC*, 2018 WL 1173823, at \*3 (E.D. Cal. Mar. 6, 2018) ("Aspect is, undeniably, an [ATDS]"); *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674 (D. Md. 2017) ("there is no serious dispute whether the Aspect system qualifies as an ATDS"). *See also* Class Cert. Reply at 16.

### D. Citi is not prejudiced by Mr. Hansen's rebuttal report; it was able to depose Mr. Hansen, and respond to his report in its motion to strike.

Citi next attempts to exclude Mr. Hansen because his rebuttal report goes beyond his original report. But Mr. Hansen's rebuttal report properly *rebuts* and is directly responsive to the opening reports of Defendants' experts Ken Sponsler and John Taylor. *City of Gary v. Shafer*, No. 2:07-CV-56-PRC, 2009 WL 1370997, at \*3-5 (N.D. Ind. May 13, 2009) (finding that rebuttal report did not raise new opinions but was a proper rebuttal of defendants' experts). Citi's claim that Mr. Hansen's rebuttal report offers "new" opinions does not make it so: Mr. Hansen's rebuttal is a proper rebuttal report because it "dealt with the same subject matter" as Citi's expert reports. *Id.* at \*5. Defendants cannot claim any prejudice as a result of Mr. Hansen's rebuttal report because they sought leave to extend the expert and discovery deadlines in order to depose Mr. Hansen, were able to depose him, and Plaintiff agreed that Defendants could re-open Mr. Hansen's deposition after they were able to review and interpret the technical documents produced prior to Mr. Hansen's deposition. *See* ECF 134 ¶¶ 3-11. *City of Gary*, 2009 WL 1370997, at \*\*5-6 (defendants not prejudiced because they had the opportunity to depose the expert submitting the rebuttal expert report, *and did* depose him).

Contrary to the *Lowe* case, in which Mr. Hansen provided new testimony that did not directly respond to issues raised by Mr. Taylor, the rebuttal report in this case responds—directly—to criticisms by Citi's experts, as well as examples in the data points selected by Citi in Plaintiffs' analysis. *Cf. Lowe v. CVS Pharmacy, Inc.*, No. 14 c 3687, 2017 WL 2152385, at *2 (N.D. Ill. May 17, 2017) ("Because Taylor did not opine on the number of calls for which there was consent, there would have been no basis for Hansen to address that issue in rebuttal."). Citi suffers no prejudice because it was able to depose Mr. Hansen—multiple times—and respond to his rebuttal report. *See also Ung v. Universal Acceptance Corp.*, No. CV 15-127 (RHK/FLN), 2016 WL 9307196, at *3 (D. Minn. July 6, 2016) ("any prejudice UAC may suffer from not being able to depose Hansen and potentially obtain a rebuttal expert is cured by giving UAC time to do so.")[7]; *Blair v. CBE Group, Inc.*, 309 F.R.D. 621, 626 (S.D. Cal. 2015) (finding no prejudice on defendant with the inclusion of Mr. Hansen's rebuttal).[8]

## III. CONCLUSION

Jeffrey Hansen is a well-respected expert, who is abundantly qualified to render opinions in TCPA cases. His analysis in this case relies upon data from Citi, and will assist the trier of fact in understanding Citi's systems and, as applied to the law, how Citi's systems were used to violate the TCPA. Citi's criticisms—at best—go to the weight of Mr. Hansen's opinions, and not to their admissibility. Citi's motion to strike his expert opinions should be denied in full.

---

[7] To be clear: Rule 26 contemplates rebuttal reports, but not sur-rebuttal reports. Plaintiff would have consented to the filing of Mr. Taylor's sur-rebuttal (subject to the Court's approval), had Citi sought leave or provided Plaintiff with an opportunity to depose Mr. Taylor. However, at some point, seriatim expert rebuttals are no longer helpful, and "potentially endless in circumstance[.]" *Olney v. Job.com*, No. 12-cv-01724-LJO, 2014 WL 5430350, at *9 (E.D. Cal. Oct. 24, 2014).

[8] Citi's assertion that the class certification schedule was somehow extended by Plaintiff's proper service of a rebuttal repot merits some discussion. Plaintiff agreed to seek leave from the Court to provide Citi with additional time to depose Mr. Hansen in light of intervening holidays (and natural disasters). Citi did not raise any issue of cost, hardship, or prejudice in prior briefing or correspondence. The inclusion of this point now is simply opportunistic.

RESPECTFULLY SUBMITTED AND DATED this 13th day of March, 2018.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Jennifer Rust Murray, *Admitted Pro Hac Vice*
    Beth E. Terrell, *Admitted Pro Hac Vice*
    Email:  bterrell@terrellmarshall.com
    Mary B. Reiten, *Admitted Pro Hac Vice*
    Email:  mreiten@terrellmarshall.com
    Jennifer Rust Murray, *Admitted Pro Hac Vice*
    Email:  jmurray@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

    Alexander H. Burke
    Email:  aburke@burkelawllc.com
    BURKE LAW OFFICES, LLC
    155 North Michigan Avenue, Suite 9020
    Chicago, Illinois 60601
    Telephone: (312) 729-5288
    Facsimile: (312) 729-5289

    Syed Ali Saeed
    Email:  ali@sllawfirm.com
    SAEED & LITTLE, LLP
    1433 North Meridian Street, Suite 202
    Indianapolis, Indiana 46202
    Telephone: (317) 614-5741
    Facsimile: (888) 422-3151

    *Attorneys for Plaintiffs Joseph Morden, Pamela*
    *Slaughter, and Frank Lopez and the Proposed Classes*

Adam J. Levitt
Email: alevitt@dlcfirm.com
Amy E. Keller
Email: akeller@dlcfirm.com
DICELLO LEVITT & CASEY LLC
10 North Dearborn Street, 11th Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

Sergei Lemberg
Email: slemberg@lemberglaw.com
LEMBERG & ASSOCIATES
1100 Summer Street, Third Floor
Stamford, Connecticut 06905
Telephone: (203) 653-2250
Facsimile: (203) 653-3424

*Attorneys for Plaintiff Eduardo Tomeo and the
Proposed Classes*

<u>CERTIFICATE OF SERVICE</u>

I, Jennifer Rust Murray, hereby certify that on March 13, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Alejandro Valle, Indiana Attorney #22863-49
> CITIZENS ENERGY GROUP
> 2020 N. Meridian Street
> Indianapolis, Indiana 46202
> Telephone: (317) 987-6986
> Email: avalle@citizensenergygroup.com
>
> Hans J. Germann
> Email: hgermann@mayerbrown.com
> Debra Bogo-Ernst
> Email: dernst@mayerbrown.com
> Lucia Nale
> Email: lnale@mayerbrown.com
> Joseph M. Snapper
> Email: jsnapper@mayerbrown.com
> Michael H. Bornhorst
> Email: mbornhorst@mayerbrown.com
> MAYER BROWN LLP
> 71 South Wacker Drive
> Chicago, Illinois 60606
> Telephone: (312) 782-0600
> Facsimile: (312) 701-7711
>
> *Attorneys for Defendants*

DATED this 13th day of March, 2018.

> TERRELL MARSHALL LAW GROUP PLLC
>
> By:  /s/ Jennifer Rust Murray, *Admitted Pro Hac Vice*
>      Jennifer Rust Murray, *Admitted Pro Hac Vice*
>      Email: jmurray@terrellmarshall.com
>      936 North 34th Street, Suite 300
>      Seattle, Washington 98103-8869
>      Telephone: (206) 816-6603
>      Facsimile: (206) 319-5450
>
> *Attorneys for Plaintiffs Joseph Morden, Pamela*
> *Slaughter, and Frank Lopez and the Proposed Classes*

- 18 -